# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00475-CV

### Bosque River Coalition, Appellant

### v.

### Texas Commission on Environmental Quality, Appellee

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. D-1-GN-09-003219, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING**

---

## O P I N I O N

Bosque River Coalition ("the Coalition") appeals a district-court judgment affirming an order of the Texas Commission on Environmental Quality ("the Commission") denying the Coalition's request for a contested-case hearing regarding the proposed issuance of a water-quality permit. We will reverse the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

This proceeding arises from dairy owner and operator Gerben Leyendekker's application to amend an existing "concentrated animal feeding operation" (CAFO)[1] permit to increase the maximum number of cows permitted to be confined at his dairy from 700 to 999 head

---

[1] A dairy that confines and feeds two hundred or more cows for extended periods of time in areas that do not sustain vegetation is one type of CAFO. CAFOs are legally considered "point sources" of water pollution and are required to obtain water-quality permits. *See* 30 Tex. Admin. Code §§ 321.31, .32(3), (13), (58), .33 (2011) (Tex. Comm'n on Envtl. Quality, CAFOs).

and to allow the dairy to apply liquid and solid wastes to "waste application fields" located closer to Gilmore Creek, a creek located in the North Bosque River watershed and, according to the Coalition, closer to creekside property owned by its members.[2] The Commission staff classified the permit application as seeking a "major" amendment to the dairy's existing water-quality permit. *See* 30 Tex. Admin. Code § 305.62(c)(1) (2011) (Tex. Comm'n on Envtl. Quality, Amendments) ("A major amendment is an amendment that changes a substantive term, provision, requirement, or a limiting parameter of a permit.").[3] The Commission's rules provide an opportunity for interested persons to request reconsideration of the executive director's preliminary decision regarding such a permit and to request a contested-case hearing under the Administrative Procedure Act (APA), Tex. Gov't Code Ann. §§ 2001.001-.902 (West 2008). *See* Tex. Water Code Ann. § 5.556 (West Supp. 2010); 30 Tex. Admin. Code § 55.201 (2011) (Tex. Comm'n on Envtl. Quality, Requests for Consideration or Contested Case Hearing).

The Commission's executive director declared the permit application administratively complete, conducted technical review, prepared a draft permit, and issued a preliminary decision that the draft permit, if issued, met all statutory and regulatory requirements. As Leyendekker had requested, the draft permit proposed to increase the dairy's maximum herd size from 700 to 999 head. At the same time, however, the draft permit proposed to implement several new measures that

---

[2] The Coalition is a non-profit Texas corporation whose purpose is the conservation and environmental protection of the Bosque River watershed and the prevention of and opposition to pollution in the Bosque River watershed.

[3] This Court recently set forth a detailed review of the statutes and rules prescribing the procedures through which the Commission considers this type of application in *City of Waco v. Texas Comm'n on Envtl. Quality*, No. 03-09-00005-CV, 2011 WL 2437669 (Tex. App.—Austin June 17, 2011, no pet. h.).

2

Commission staff viewed as strengthening the overall water-quality protections at the facility, even considering the higher volumes of manure that would be produced by hundreds more cows. These included steps aimed at reducing the possibility of discharges from the dairy's retention control structures by more than doubling their total storage capacity—estimated to accommodate rainfall and runoff from a 12.0-inch rain event—and expanding the size of non-vegetative buffer zones around the waste application fields.

During the public comment period, the City of Waco submitted numerous comments in opposition to the proposed permit.[4] The executive director responded to the comments and ultimately determined that the application and draft permit met the requirements of the applicable law. The Coalition then timely filed a written request for a contested-case hearing. The request stated that certain individuals and entities that are members of the Coalition "are affected persons with personal justiciable interests not common to the general public in that they own property along Gilmore Creek downstream from the Dairy and into which discharges and runoff from the Dairy drain."[5] Specifically:

---

[4] The City of Waco has been prominent among those advocating stricter regulatory limits on dairies, such as the Leyendekker dairy, operating in the Bosque River watershed. The dairy industry in the North Bosque watershed has seen significant growth resulting in controversy among regulators, scientists, elected officials, and members of the public regarding the extent to which increasing volumes of animal waste generated by dairy cows may be damaging water quality in the North Bosque River and ultimately Lake Waco. Lake Waco is a source of the City of Waco's municipal water supply and is linked to the city's broader economic health.

[5] A group or association may request a contested-case hearing if the group or association meets all of the following requirements:

(1)      one or more members of the group or association would otherwise have standing to request a hearing in their own right;

3

Mr. Claude Kilpatrick owns over 100 acres along Gilmore Creek, approximately 2 miles from the Dairy. He uses the property as a ranch and maintains cattle and horses. Mr. Kilpatrick and his family use Gilmore Creek for fishing and recreation.

Mr. Torrey Moncrief owns over 400 acres also along Gilmore Creek, approximately 1.5 miles from the Dairy.

The Ranch at Hico, LLC ("The Ranch") owns over 1,500 acres along Gilmore Creek, approximately 1.7 miles from the Dairy. This property also includes Gilmore Creek Reservoir, a PL-566 reservoir . . . that has already been negatively impacted by discharges from the Dairy. The Ranch uses the property as a cattle ranch and retreat for religious organizations, including the use of Gilmore Creek and Gilmore Creek Reservoir for boating, fishing, swimming, tubing, and stock watering.

The request stated that "[t]he proposed discharge authorized by the Draft Permit, and resulting effects on water quality in Gilmore Creek, threaten the use and enjoyment of their property and their use of Gilmore Creek." Attached to the request was a map showing the locations of the dairy, the three Coalition members' property, and the direction of flow of Gilmore Creek. The request listed 32 disputed issues of fact that the Coalition contended were derived from comments made by the City of Waco during the public comment period.[6]

<hr/>

(2)     the interests the group or association seeks to protect are germane to the organization's purpose; and

(3)     neither the claim asserted nor the relief requested requires the participation of the individual members in the case.

*See* 30 Tex. Admin. Code § 55.205(a) (2011) (Tex. Comm'n on Envtl. Quality, Request by Group or Association). The Commission's executive director noted that the Coalition stated in its hearing request that (1) "it was formed for the purpose of furthering the protection and enhancement of water quality in the Bosque River watershed; [sic] an interest germane to the organization's specific purpose," and (2) "neither the claim asserted nor the relief requested requires the participation of the named Coalition members in the case."

[6] When reviewing the hearing request the executive director found that the disputed issues as characterized by the Coalition were, in some instances, overbroad to the extent they brought in

4

The executive director timely filed a response in opposition to the Coalition's contested-case hearing request. *See* 30 Tex. Admin. Code § 55.209(d), (e) (2011) (Tex. Comm'n on Envtl. Quality, Processing Requests for Reconsideration and Contested Case Hearing). The executive director did not dispute that the Coalition, if an affected person, would have a legal right to a contested-case hearing and concluded that the Coalition's request met the Commission's procedural requirements governing hearing requests, including providing the requisite "brief, but specific, written statement" explaining the Coalition's personal justiciable interest affected by the application. *See id.* § 55.201(d)(2) (2011) (Tex. Comm'n on Envtl. Quality, Requests for Reconsideration or Contested Case Hearing).[7] The executive director further agreed that there were four fact issues raised by the Coalition that would be referable to SOAH. *See id.* §§ 55.201(d)(4), .211(c)(2)(A) (2011) (Tex. Comm'n on Envtl. Quality, Commission Action on Requests for Reconsideration and Contested Case Hearing). However, after considering whether the Coalition met the section 55.205(a)(1) association requirements, the executive director concluded that it did

issues not raised during the public comment period. The executive director referred to the disputed issues by the response to comment number noted in the Coalition's request and framed the issues as he perceived they had been raised by the City of Waco during the pubic comment period. In contrast, the Office of Public Interest Counsel concluded that each issue raised by the Coalition "accurately reflects a comment or concern expressed by the City of Waco and does not go beyond the scope of the City of Waco's comments, although some issues encompass more than one comment."

[7] In section 5.115 of the previous version of the water code, the hearing request also had to be (1) "reasonable," considering such factors as whether the project would decrease emissions or discharges of pollutants and "the extent to which the person requesting a hearing is likely to be impacted by the emissions, discharge, or waste," and (2) supported by "competent evidence." *See* Act of May 28, 1995, 74th Leg., R.S., ch. 882, § 1, 1995 Tex. Gen. Laws 4380, 4381. The legislature deleted the "reasonableness" and "competent evidence" requirements when it amended the statute in 1999. *See* Act of May 30, 1999, 76th Leg., R.S. ch. 1350, § 1, 1999 Tex. Gen. Laws 4570 (codified at Tex. Water Code Ann. § 5.115).

5

not because he found that none of the three members identified in the hearing request had standing as an "affected person." With respect to each of the members, the executive director stated that none had a personal justiciable interest distinguishable from the general public that would be affected by the application because "the permit does not authorize discharges into water in the state under normal operating conditions." The executive director also relied on the following propositions to support his conclusion that none of the members had standing as an "an affected person":

- The dairy will not be authorized to discharge except in the event of a 25-year, 10-day storm event. The new pond sizing requirements included in the permit result in retention control structures that are designed to contain a 12.0 inch rainfall, an event that "should be very infrequent and in such an event, a discharge from the RCSs [Retention Control Structures] may still not occur."

- Runoff from the dairy's waste application fields and third-party fields is considered exempt agricultural runoff that is not regulated, assuming that waste is applied in compliance with the permit and applicable rules.

- Kilpatrick's property is located approximately 2.7 miles downstream from the facility and approximately 3 miles from the RCSs. The executive director reasoned that because of this distance, activities conducted at the facility "are not expected to affect the health and safety of Mr. Kilpatrick."

- Moncrief's property is located approximately 2.06 miles downstream from the facility, and "due to the distance . . . it is unlikely that the dairy would impact the health and safety of Mr. Moncrief," and "any claimed health impacts by Moncrief would be similar to that of the general public."

- The Ranch's property is located approximately 2.27 miles from the facility, and "due to the distance the chance of an impact of the dairy on the health and safety of persons residing at or using the Ranch are similar to that of other members of the general public." The executive director further stated that "[t]he same factors also dictate that the impact of the facility on the use of the Ranch's property by its residents is similar to other members of the general public."

6

Consequently, the executive director concluded that the Coalition did not meet one of the necessary criteria for a group or association to request a hearing because it failed to demonstrate that one or more of its members was an "affected person" with standing to request a hearing in his own right. *See id.* § 55.205(a)(1).

The Coalition filed a reply in support of its hearing request. *See id.* § 55.209(g). The Coalition asserted that the executive director's contention that the three members are not affected persons was "baseless because it relies solely on the presumption that a permit only allowing a discharge during certain rainfall events will, as a matter of law, not impact the downstream landowners." The Coalition contended that such a presumption "fails because this issue is a central question of fact raised by the Coalition's hearing request," and that the Commission's denial of the hearing request was based on "its decision on the properties' distance from the [dairy] alone and providing no facts, or even analysis, that at the referenced distances the properties of Mr. Kilpatrick, Mr. Moncrief, and the Ranch and use of said properties would not be impacted." The Coalition further argued that it had established that Kilpartrick, Moncrief, and the Ranch are affected persons with standing to request a contested-case hearing because of their downstream proximity to the dairy. Because of this location, the Coalition argued, any potential discharge from the dairy would negatively affect water quality in Gilmore Creek, thereby threatening their use and enjoyment of their property and the creek for fishing, recreation, religious activities, and stock watering in a manner not common to members of the public.

The Commission subsequently considered the Coalition's hearing request and Leyendekker's permit application in a public meeting. *See* 30 Tex. Admin. Code § 55.209(g). No

7

further evidence related to the hearing request was presented. The Commission denied the Coalition's request for hearing without referring it to SOAH. *See id.* § 55.211(b). In its order, the Commission stated that it had evaluated the request "under the requirements in the applicable statutes and Commission rules, including 30 Texas Administrative Code Chapter 55," and considered "all other timely filings in this matter, including the responses to the Coalition's hearing request filed by the Executive Director and the Office of Public Interest Counsel and the Coalition's reply." In the same order, the Commission revised and then adopted as revised the executive director's response to public comment, approved the permit amendment, and issued the permit as recommended by the executive director.

The Coalition filed a motion for rehearing, which was overruled by operation of law. The Coalition then sought judicial review of the Commission's order in Travis County district court. *See* Tex. Water Code Ann. §§ 5.351, .354 (West Supp. 2010). The district court affirmed the Commission's order, and this appeal followed. *See id.* § 5.355 (West Supp. 2010).

## DISCUSSION

In a single issue, the Coalition contends that the Commission erred in denying its hearing request and that the district court similarly erred in affirming the Commission's order. Although the Commission's order does not state the specific grounds for the denial and the Commission did not enter findings of fact or conclusions of law, the parties agree that the denial was based on the Commission's conclusion that the Coalition is not an "affected person" with respect to the Leyendekker permit application under the applicable water code provisions and Commission

8

rules governing the right to a contested-case hearing.[8]  The Coalition asserts that this conclusion was

erroneous and that, at a minimum, it was entitled to a contested-case hearing on the issue of whether

it is an "affected person" under those statutes and rules.

In a suit for judicial review of an agency order pursuant to the APA, a reviewing

court must:

> reverse or remand the case for further proceedings if substantial rights of the
> appellant have been prejudiced because the administrative findings, inferences,
> conclusions, or decisions are:
>
> (A)  in violation of a constitutional or statutory provision;
>
> (B)  in excess of the agency's statutory authority;
>
> (C)  made through unlawful procedure;
>
> (D)  affected by other error of law;
>
> (E)  not reasonably supported by substantial evidence considering the
> reliable and probative evidence in the record as a whole; or
>
> (F)  arbitrary or capricious or characterized by abuse of discretion or
> clearly unwarranted exercise of discretion.

Tex. Gov't Code Ann. § 2001.174(2) (West 2008).  Otherwise, the reviewing court may affirm the

administrative decision.  *Id.* § 2001.174(1).  Pursuant to section 2001.174(2), if the reviewing court

---

[8]  The executive director determined, and the Commission does not dispute, that the Coalition's hearing request raised disputed, relevant, and material fact issues regarding the permit application and otherwise complied with the procedural and substantive requirements that would entitle the Coalition, if it is an "affected person," to a contested-case hearing on the application.  *See* Tex. Water Code Ann. § 5.556(c), (d) (West Supp. 2010); 30 Tex. Admin. Code §§ 55.201 (2011) (Tex. Comm'n on Envtl. Quality, Requests for Reconsideration or Contested Case Hearing), .211(b)(3), (c) (2011) (Tex. Comm'n on Envtl. Quality, Commission Action on Requests for Reconsideration and Contested Case Hearing).

9

finds any of the six categories of "error" listed and determines that such error prejudiced the "substantial rights" of the party seeking review, the court must reverse and/or remand the case for further proceedings. *Id.* § 2001.174(2).

Water code section 5.115(a) provides that the term "affected person" means:

> a person who has a personal justiciable interest related to a legal right, duty, privilege, power, or economic interest affected by the administrative hearing. An interest common to members of the general public does not qualify as a personal justiciable interest.

Tex. Water Code Ann. § 5.115(a) (West 2008). The Commission's pertinent rules incorporate the same definition. *See* 30 Tex. Admin. Code §§ 55.103 (2011) (Tex. Comm'n on Envtl. Quality, Requests for Reconsideration and Contested Case Hearings; Public Comment) ("[A]ffected person" with respect to permit application "has a personal justiciable interest related to a legal right, duty, privilege, power, or economic interest affected by the [permit] application. An interest common to members of the general public does not qualify as a personal justiciable interest."), .203(a) (2011) (Tex. Comm'n Envtl. Quality, Determination of Affected Person) (same).

Water code section 5.115 provides that the Commission "shall adopt rules specifying factors which must be considered in determining whether a person is an affected person in any contested case arising under the air, waste, or water programs within the commission's jurisdiction and whether an affected association is entitled to standing in contested case hearings." Tex. Water Code Ann. § 5.115(a). The Commission has promulgated the following rule:

10

In determining whether a person is an affected person, all factors shall be considered, including, but not limited to, the following:

(1)     whether the interest claimed is one protected by the law under which the application will be considered;

(2)     distance restrictions or other limitations imposed by law on the affected interest;

(3)     whether a reasonable relationship exists between the interest claimed and the activity regulated;

(4)     likely impact of the regulated activity on the health and safety of the person, and on the use of property of the person;

(5)     likely impact of the regulated activity on use of the impacted natural resource by the person; and

(6)     for governmental entities, their statutory authority over or interest in the issues relevant to the application.

30 Tex. Admin. Code § 55.203(c).

The water code does not prescribe a particular procedure through which the Commission is to determine whether the requestor is an "affected person." *See* Tex. Water Code Ann. § 5.115. However, the Commission's rules provide that the requestor must

identify the person's personal justiciable interest affected by the application, including a brief, but specific, written statement explaining in plain language the requestor's location and distance relative to the proposed facility or activity that is the subject of the application and how or why the requestor believes he or she will be adversely affected by the proposed facility or activity in a manner not common to members of the general public.

*See* 30 Tex. Admin. Code § 55.201(d)(2), (4).

11

Once a request for a contested-case hearing is filed, the executive director, the public interest counsel, and the applicant may each file a response. *See id.* § 55.209(d). Among other things, any such response must specifically address "whether the requestor is an affected person." *See id.* § 55.209(e)(1).[9] The hearing requestor then has the right to submit a written reply to the response. *See id.* § 55.209(g).

The Commission then "evaluates" the hearing request *See id.* § 55.211(b). The Commission's evaluation of the hearing request "is not itself a contested case subject to the APA." *See id.* § 55.211(a). After evaluating the request, the Commission has four options. *See* 30 Tex. Admin. Code § 55.211(b)-(d). First, the Commission may "determine that a hearing request meets the requirements of this subchapter," and "shall" grant the request if it is made by an "affected person" and is (1) timely filed, (2) "pursuant to a right to hearing authorized by law," (3) complies with the form and content requirements of rule 55.201, and (4) "raises disputed issues of fact that were raised during the [public] comment period, that were not withdrawn . . . and that are relevant and material to the [C]ommission's decision on the application." *See id.* § 55.211(b)(3), (c). In that instance, the Commission must refer the disputed relevant and material fact issues to SOAH for a contested-case hearing. *See id.* § 55.211(b)(3). The Commission's second option is to "determine that the hearing request does not meet the requirements of this subchapter" and proceed to act on the

---

[9] The responding party may agree that the requestor is an "affected person" but oppose the contested-case hearing request for a different reason, e.g., that the disputed issues that are the basis of the hearing request were not raised during the public comment period or were withdrawn. In such a case, the responding party would still be required to "address" whether the requestor was an affected person, and presumably would do so by stating its agreement on that issue. *See* Tex. Admin. Code § 55.209(e)(1) (2011) (Tex. Comm'n on Envtl. Quality, Processing Requests for Reconsideration and Contested Case Hearing).

12

permit application without a hearing. *See id.* 55.211(b)(2). Its third option is to refer the hearing request itself to SOAH for a contested-case hearing and recommendation "on the sole question of whether the requestor is an affected person." *See id.* § 55.211(b)(4). Finally, the Commission has the discretion to grant a hearing request in the "public interest." *See id.* § 55.211(d). If the Commission refers the hearing request to SOAH for a recommendation on the "sole issue of whether the requestor is an affected person," the hearing request "shall be processed as a contested case under the APA." *See id.* § 55.211(b)(4).

This Court recently held that the same basic principles governing whether a party has standing to challenge governmental action in court also govern whether a party is an "affected person" entitled to a contested-case hearing. *See City of Waco v. Texas Comm'n on Envtl. Quality*, No. 03-09-00005-CV, 2011 WL 2437669, at *14 (Tex. App.—June 17, 2011, no pet. h.). The general test for standing is whether there is a real controversy between the parties that will actually be determined by the judicial declaration sought. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443-45 (Tex. 1993). The Supreme Court has observed that the "irreducible constitutional minimum" of individual standing contains three elements: (1) the plaintiff must have suffered an "injury in fact," an invasion of a legally protected interest that is concrete, particularized, and actual or imminent rather than conjectural or hypothetical, (2) the injury is fairly traceable to the challenged action of the defendant and not the independent action of a third party not before the court, and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001) ("[W]e may look to the similar federal standing requirements for guidance."). Applying these

13

principles, in order to establish that it is an "affected person" entitled to a contested-case hearing with regard to the Leyendekker permit application, the Coalition was required to show that (1) issuance of the permit as proposed would cause one or more of its members to suffer an injury, i.e., a concrete and particularized invasion of a legally protected interest that is actual or imminent as opposed to conjectural or hypothetical, and (2) that the injury would likely be redressed by a favorable decision on the party's complaints regarding the proposed permit, i.e., the Commission's refusal to grant the permit or imposition of additional conditions. *See City of Waco*, 2011 WL 2437669, at *15.

In *City of Waco*, this Court elaborated on the nature of the actual or anticipated injury necessary to give rise to a personal justiciable interest under the water code. Observing that "the existence of the injury-in-fact required for constitutional standing is conceptually distinct from the ultimate question of whether the plaintiff has incurred a *legal* injury—i.e., whether the plaintiff has a valid claim for relief on the merits"—this Court held that a hearing requestor is required to show only that "potential harm" would result from issuance of the permit as proposed. *Id*. at *15. The required "potential harm" from the permit's issuance must, however, be "more than speculative. There must be some allegation or evidence that would tend to show that the [requestor's legally protected interests] will be affected by the action." *Id.* at *18 (quoting *Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 883 (Tex. App.—Austin 2010, pet. denied)); *see also United Copper v. Grissom*, 17 S.W.3d 797, 803-04 (Tex. App.—Austin 2000, pet. dism'd) ("potential harm" that conferred standing was established by United Copper's own data indicating that its operations would increase levels of lead and copper particulate at Grissom's home and his

child's school, together with proof that Grissom and his child suffered from "serious asthma"); *Heat Energy Advanced Tech., Inc. v. West Dallas Coal. for Envtl. Justice*, 962 S.W.2d 288, 295 (Tex. App.—Austin 1998, pet. denied) ("potential harm" established where association member's house was located one-and-a-half blocks from facility, permit applicant had acknowledged in another Commission proceeding that facility emitted odors, and association member claimed to detect strong odors coming from it).

The Commission contends that we may not reverse its conclusion that the Coalition is not an "affected person" because that conclusion is supported by substantial evidence. The Commission asserts that, in order to determine whether the Coalition met the "affected person" standard, it was required to find facts. According to the Commission, we are required to review its fact findings under the "substantial-evidence" standard and consider only whether the evidence, in its entirety, is enough that reasonable minds could have reached the conclusion the agency must have reached. *See H. G. Sledge v. Prospective Inv. & Trading Co.*, 36 S.W.3d 597, 602 (Tex. App.—Austin 2000, pet. denied). When substantial-evidence review applies, the evidence in the record may actually preponderate against the agency's decision, yet satisfy the substantial-evidence standard.[10] *Id.* In *City of Waco*, this Court addressed a similar argument advanced by the

_____

[10] As the Court observed in *City of Waco*, the term "substantial-evidence review" is sometimes used as a shorthand reference to the entire scope of review under the APA which, while titled "Review Under Substantial Evidence Rule or Undefined Scope of Review," authorizes reversal of agency decisions not only where "not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole," but also when the decisions were "in violation of a constitutional or statutory provision," "in excess of the agency's statutory authority," "made through unlawful procedure," "affected by other error of law," or "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." *See* Tex. Gov't Code Ann. § 2001.174 (West 2008). Our use of the term "substantial-evidence review" in this opinion is intended in the narrower sense to refer only to a determination of whether the agency order

15

Commission and concluded that substantial-evidence review on an agency record is simply "not possible" absent the opportunity to develop that record through a contested-case or other adjudicative hearing. *See City of Waco*, 2011 WL 2437669, at *29 (citing *Texas Dep't of Ins. v. State Farm Lloyds*, 260 S.W.3d 233, 245 (Tex. App.—Austin 2008, no pet.) and *Ramirez v. Texas State Bd. of Med. Exam'rs*, 927 S.W.2d 770, 773 (Tex. App.—Austin 1996, no writ)); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414-15 (1971) (substantial-evidence review applied to agency actions "based on public adjudicatory hearing," not to "nonadjudicatory, quasi-legislative" agency proceeding that "is not designed to produce a record that is to be the basis of agency action—the basic requirement for substantial-evidence review"). In the present case, the parties agree that the underlying agency proceeding was not an APA contested case. The district court confined its review to the agency record. Consequently, because the Coalition never had the opportunity to develop an evidentiary record before the Commission through contested-case or adjudicative processes, substantial-evidence review is inapplicable and therefore unavailable. *See City of Waco*, 2011 WL 2437669, at *30.

Relying on this Court's opinion in *Collins v. Texas Natural Res. Conservation Comm'n*, 94 S.W.3d 876 (Tex. App.—Austin 2002, no pet.), the Commission next contends that because the proposed permit amendment will impose greater environmental protective measures than does the current permit, the Coalition cannot be affected or injured by its issuance of the permit so as to have a personal justiciable interest in opposing it. This Court addressed and rejected a similar argument in *City of Waco*:

is reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole.

16

> That the current legal requirements incorporated into the new permit are "more protective" than in years past is, standing alone, irrelevant. What matters is that discharge, run-off, or loading is an acknowledged certainty under the amended permit, and if this injures the City's legally protected interest, the City would possess a personal justiciable interest in the enforcement of the current laws regardless of how the harm compares to that occurring under the previous permit.

*City of Waco*, 2011 WL 2437669, at *33. As in *City of Waco*, we hold that to the extent the Commission denied the Coalition's hearing request based on the premise that the amended Leyendekker permit would be "more protective" of the environment than the current one, it acted arbitrarily by relying on a factor that is irrelevant to the Coalition's standing to obtain a hearing. *Id.* (citing *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 184 (Tex. 1994), and *State Farm Lloyds*, 260 S.W.3d at 246).

The Commission asserts that, in reaching its conclusion that none of the Coalition members was an "affected person," it "weighed the relevant factors and reached a reasonable conclusion" that the Coalition's members "were not likely to be adversely affected." In *City of Waco*, this Court held that the Commission does not "categorically lack discretion to consider evidence—through some sort of procedure—when it 'determines' whether a request was 'filed by an affected person as defined by Section 5.115.'" *City of Waco*, 2011 WL at *25 (quoting Tex. Water Code Ann. § 5.556(c)). This Court observed that the Commission, as it does in the present case, analogized itself to a trial court deciding a plea to the jurisdiction, and further noted the well-established principle that trial courts, when determining jurisdictional issues such as standing, are not bound by allegations in pleadings but may—and sometimes must—consider evidence to the extent necessary to decide the issue. *Id.* at *24 (citing *Texas Dep't of Parks & Wildlife v. Miranda*,

17

133 S.W.3d 217, 226-29 (Tex. 2004), and *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554-55 (Tex. 2000)). And we have previously approved an agency's adoption of the basic analytical framework applied by trial courts when deciding pleas to the jurisdiction, including consideration of jurisdictional evidence in addition to the pleadings, in a procedural context similar to the present one—the education commissioner's determination of his own jurisdiction over appeals under education code section 7.057 which, like the water code and Commission rule applicable here, also does not mention evidence. *See* Tex. Educ. Code Ann. § 7.057 (West 2006); *see also Tijerina v. Alanis*, 80 S.W.3d 292, 295 (Tex. App.—Austin 2002, pet. denied); *Smith v. Nelson*, 53 S.W.3d 792, 794 (Tex. App.—Austin 2001, pet. denied).

As in the analogous plea-to-the-jurisdiction analysis, however, the Commission's procedural discretion to resolve issues relevant to hearing requests is limited when it is faced with disputed facts that are relevant both to a hearing requestor's status as an "affected person" and to the merits of the permit application. *See City of Waco*, 2011 WL 2437669, at *34-35. We held that, in such instances, the Commission is required to apply procedures similar to those identified by the supreme court as appropriate for a trial court faced with a jurisdictional challenge that requires the resolution of jurisdictional facts that implicate the merits of the plaintiff's claim. *Id.* (citing *Miranda*, 133 S.W.3d at 228 ("By reserving for the fact finder the resolution of disputed jurisdictional facts that implicate the merits of the claim or defense, we preserve the parties' right to present the merits of their case at trial.")). In *Miranda*, the supreme court concluded that where jurisdictional facts overlap with the merits of claims or defenses, the trial court lacks discretion to dismiss a claim at a preliminary stage unless there is conclusive or undisputed evidence negating the

18

challenged jurisdictional fact. *See* 133 S.W.3d at 227-28. Otherwise, the trial court cannot grant the plea to the jurisdiction, and the fact issue is resolved by the trier of fact. *Id.* Applying this procedural framework to the Commission's evaluation of a party's status as an "affected person," if there are disputed questions of fact that are relevant both to affected person status and to the merits of the permit application, the Commission has no discretion to resolve those fact issues at this stage of the proceeding and must refer the hearing request to SOAH for a contested-case hearing to address those issues. *See* 30 Tex. Admin. Code § 55.211(b)(4); *City of Waco*, 2011 WL 2437669, at \*35 ("Where 'affected person' status turns on [disputed facts that are relevant and material to the Commission's decision on a permit application], we conclude that *Miranda's* reasoning would preclude the Commission from determining those facts without affording the hearing requestor the adjudicative processes that the Legislature and Commission rules have guaranteed them on the merits—a contested-case hearing."). The hearing request "shall be processed as a contested case under APA." 30 Tex. Admin. Code § 55.211(b)(4).

In the present case, the four material fact issues identified by the executive director as appropriate for referral to SOAH in the event the Coalition was found to be entitled to a contested-case hearing on the permit application were issues relevant to whether the proposed permit complied with current regulatory requirements. And whether the proposed permit complies with regulatory requirements (disputed facts implicating the merits) is directly related to whether issuing the permit will cause an injury to Coalition members located downstream of the Leyendekker dairy (disputed facts regarding affected-person status). For example, a proposed permit that is not in compliance with requirements designed to eliminate or reduce the regulated activity's environmental

19

impact on a waterway is more likely to cause some type of injury to those downstream. The hearing request, therefore, raised questions of fact relevant to both the Coalition's status as an "affected person" and to the merits of the permit application. Consequently, the Commission was required to refer the issue to SOAH unless the agency record conclusively negated, through evidence or otherwise, the Coalition's claim that the dairy's operations under the amended permit could cause injury to a legally protected interest, i.e., that it is an "affected person."

The Commission contends, however, that the Coalition "*failed to substantiate* its allegations that its members would be adversely affected," and argues that the information provided in the hearing request is "too sparse to evaluate potential impacts." (Emphasis added.) In its request for a contested-case hearing, the Coalition stated that three of its members are downstream landowners who recreate in the waterway and use their property for economic purposes. The request stated that discharges and runoff from the Leyendekker dairy drain into a creek approximately one to two miles upstream from the members' properties. The Coalition members each asserted their own property and economic interests, thereby sufficiently distinguishing their interests from those of the general public. *Cf. Save Our Springs Alliance, Inc.*, 304 S.W.3d at 878-80 (plaintiffs who claimed "environmental," "scientific," and "recreational" interests in public water body, but no property interests affected by alleged pollution of it, had not established injury distinct from that of general public). In support of its allegation that the personal justiciable interest arose from the fact that three of its members own property downstream of, and in close proximity to, the Leyendekker dairy, and that discharges from the dairy would impact the water quality in Gilmore Creek and the Ranch reservoir, the Coalition also submitted evidence consisting of a map purporting to show the

20

location of the Coalition members' property and the Ranch's reservoir in relation to the Leyendekker dairy.

The executive director concluded that the request "substantially complies with the requirements of 30 TAC § 55.201," including the requirement that it "identify the person's justiciable interest affected by the application" and explain "why the requestor believes he or she will be adversely affected . . . in a manner not common to members of the general public." *See* 30 Tex. Admin. Code § 55.201(d). There is nothing in the water code or the rules that requires a hearing requestor to provide anything more. While prior versions of the water code and rules required a hearing requestor to supply "competent evidence" in support of its request, that requirement was eliminated from the water code in 1999. *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1350, § 1, 1999 Tex. Gen. Laws 4570. The current versions of the water code and the rules contain no express reference to evidence nor to any procedure contemplating evidence, other than with respect to hearing requests that the Commission refers to SOAH. *See* Tex. Water Code Ann. §§ 5.115, .556; 30 Tex. Admin Code §§ 55.201, .209, .211. The Commission's rules, which are more specific with regard to the procedures for the "affected person" determination, impose what are essentially pleading requirements—the hearing requestor must file a written hearing request that "identif[ies] the person's personal justiciable interest affected by the application," including a "brief, but specific, written statement explaining in plain language the requestor's location and distance relative to the proposed facility or activity that is the subject of the application and how and why the requestor believes he or she will be adversely affected by the proposed facility or activity in a manner not common to members of the public," followed by opportunities to file a "response" and "reply." *See*

21

30 Tex. Admin. Code §§ 55.201(c), (d)(2). Although the rules and relevant statutory provisions do not require that the requestor submit evidence in support of its claim to be an "affected person," the Coalition did submit evidence supporting its assertions regarding the location of its members' properties. Accordingly, we need not decide whether statements in a hearing request, standing alone, can be sufficient to demonstrate that the hearing requestor is an "affected person."[11]

The agency record does not conclusively negate the existence of the challenged jurisdictional fact—whether the dairy's operations under the amended permit may have a negative impact on the water quality of Gilmore Creek. Rather, the executive director simply stated:

> The dairy will not be authorized to discharge except in the event of a 25-year, 10-day storm event. The new pond sizing required by the draft permit is approximately 60% larger than required by the previous CAFO rules. Previously, retention control structures (RCSs) were designed to contain a 25-year, 24-hour storm event. In rainfall amounts, the increase in this area of the state is from a 7.4 inch rainfall event to a 12.0 inch rainfall. Rainfall events of a 12.0 inch magnitude should be very infrequent and in such an event, a discharge from the RCSs may still not occur.
>
> Additionally, runoff from CAFO land management units (LMUs) where waste is land applied at agronomic rates and using the required management practices meets the definition of agricultural runoff in the Clean Water Act and is exempt from regulation under that legislation. *See* 33 U.S.C. § 1362(14).
>
> Therefore, the activities conducted at the facility *are not expected* to affect the health and safety of Mr. Kilpatrick due to the distance from the facility to his property. His property is located 2.71 miles downstream from the facility and the RCSs at the facility are located approximately 3 miles from his property.
> . . .

---

[11] We note, however, that in a civil proceeding before a trial court, a party seeking to establish standing to bring a cause of action need only *allege* facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). The trial court takes allegations in the pleadings as true and construes them in favor of the pleader. *Id.*

> Therefore, due to the distance of the property downstream, approximately 2.06 miles from the facility, *it is unlikely* that the dairy would impact the health and safety of Mr. Moncrief.
>
> . . .
>
> Therefore, due to the distance of the Ranch's property downstream, approximately 2.27 miles from the facility, the *chance of an impact* of the dairy on the health and safety of persons residing at or using the Ranch are similar to that of other members of the general public.

(Emphases added.)  The executive director did not elaborate on the factual basis of these assertions other than to reference its own map illustrating the distance between the Leyendekker dairy and the property owned by the three Coalition members.  No further explanation is provided as to why or how the Commission should infer from the mere fact of distance that discharges from the dairy would "not be expected to" or were "unlikely to" impact the health and safety of the members. "Even if the unsworn assertions of the Commission's executive director could otherwise be considered 'evidence,' these sorts of unsupported factual conclusions cannot support a reasonable inference that those facts exist." *City of Waco*, 2011 WL 2437669, at \*37 (citing *Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004) (conclusory or speculative opinions are "incompetent evidence" that cannot support judgment)); *see also Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999) ("[I]t is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand on the mere *ipse dixit* of a credentialed witness.")

The executive director also stated that the Coalition members' interests were not distinguishable from that of the general public "because the permit does not authorize discharges into water in the state under normal operating conditions."  It is undisputed that the proposed permit does

23

authorize discharges into the water—in the event of a 25-year, 10-day storm event. Because the Coalition members' property is along the creek in close proximity to the dairy, any such discharges would impact them differently from the general public. And the general public does not have the same economic interest in the quality of the Gilmore Creek Reservoir as does the Ranch. To the extent the Commission's denial of the Coalition's hearing request was based on an implied determination that the Leyendekker dairy's contributions of waste, nutrients, or pathogens to Gilmore Creek under the amended permit would have *no* impact on the water quality in either the creek or the Ranch's reservoir, the denial was an abuse of discretion. *See City of Waco*, 2011 WL 2437669, at \*33. The Commission could have determined the extent or amount of the dairy's waste discharge, run-off, or loadings of Gilmore Creek, and the consequent impact on the three Coalition members, only by deciding some of the same fact issues that would be relevant to a decision on the merits of whether to grant the proposed permit. *Id.*

**CONCLUSION**

We hold that the Commission's conclusion that the Coalition was not an "affected person" was made through improper procedure, was affected by error of law, and was an abuse of discretion. *See* Tex. Gov't Code Ann. § 2001.174(2)(C), (D), (F). Accordingly, we reverse the district court's judgment affirming the Commission's order, reverse the Commission's order, and remand the case to the Commission for further proceedings consistent with this opinion.

24

                                _____

                                   J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Reversed and Remanded

Filed:   August 2, 2011