# IN THE SUPREME COURT OF TEXAS

════════════
No. 11-0737
════════════

Texas Commission on Environmental Quality, Petitioner,

v.

Bosque River Coalition, Respondent

════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Third District of Texas
════════════════════════════════════════════

**Argued February 28, 2013**

Justice Devine delivered the opinion of the Court.

Chief Justice Jefferson did not participate in the decision.

This case is a companion to *Texas Commission on Environmental Quality v. City of Waco*, ___ S.W.3d ___ (Tex. 2013). In that case, we concluded that the Texas Commission on Environmental Quality did not abuse its discretion in denying a contested case hearing to an interested party, who claimed a right to such a hearing under the Texas Water Code. As it did in *City of Waco*, the court of appeals concludes in this case that the interested party is entitled to a contested case hearing on a proposed amendment to an existing water-quality permit because it is an "affected person" as defined by the Water Code. 347 S.W.3d 366 (Tex. App.–Austin 2011). In *City of Waco*, this Court concluded that a party's status as an affected person was not determinative of the right to

a contested case hearing because the statute expressly exempted the proposed amendment from contested case procedures. *See City of Waco,* ___ S.W.3d at ___ (citing TEX. WATER CODE § 26.028(d)). For the same reason, we conclude that the interested party here was not entitled to a contested case hearing under the Water Code and accordingly reverse the court of appeals' judgment and render judgment for the Commission.

I

This proceeding arises from Gerben Leyendekker's application to amend his existing water-quality permit. Leyendekker is the owner and operator of a dairy located in the North Bosque River watershed. The dairy is also considered a concentrated animal feed operation. A concentrated animal feed operation or "CAFO" is an animal feeding operation in which confined poultry or livestock are housed and fed in numbers that exceed a threshold set by rule. 30 Tex. Admin. Code § 321.32(13). CAFOs are regulated by the Commission to protect surface water by restricting any flow of waste or wastewater from their premises. *See* Tex. Admin. Code §§ 321.38, .39 (describing control facility design and operational requirements). The Commission does not ordinarily permit CAFOs to discharge waste into surface water directly, but discharges may nevertheless be allowed whenever a rainfall event, either chronic or catastrophic, causes an overflow from a properly designed and operated facility. CAFO wastes have traditionally been managed by beneficial reuse through land application as fertilizers and composts.

Leyendekker's application sought to increase his dairy's herd from 700 to 999 head and to extend his dairy's waste application fields onto land nearer Gilmore Creek. Gilmore Creek is in the North Bosque River watershed and runs through property owned by some members of the Bosque

2

River Coalition, a non-profit Texas corporation whose stated purpose is the conservation and environmental protection of the Bosque River watershed. The Coalition was formed by Waco's city manager and assistant city manager about two weeks after the district court affirmed the Commission's decision to deny Waco's request for a contested case hearing in the companion case. *See City of Waco*, ___ S.W.3d ___.

The Commission's executive director reviewed Leyendekker's application, declared it administratively complete, prepared a draft permit, and ultimately recommended approval of the application. As Leyendekker requested, the draft permit increased the dairy's herd size and extended its waste application fields. The Commission staff also incorporated several new measures into the draft permit to strengthen the facility's overall water-quality protections. These measures aimed to reduce the possibility of discharges from the dairy's retention control structures by more than doubling their total storage capacity and by expanding the size of non-vegetative buffer zones around the waste application fields. The draft permit also required the dairy to beneficially apply its wastewater and manure as fertilizer under standards developed by the Natural Resource Conservation Service. The Commission had previously targeted soluble phosphorus as the key variable that could be controlled to limit algal plant growth in the North Bosque River. New standards implemented under the proposed amendment limit the application of fertilizer to the land's phosphorus needs, thereby reducing the likelihood that phosphorus will leach from the soil into Gilmore Creek as rainfall runoff.

During a public comment period for the Leyendekker permit, the City of Waco submitted numerous comments in opposition to the proposed permit. Waco has been prominent among those

3

advocating stricter regulatory limits on dairies that operate in the North Bosque River watershed. The dairy industry has seen significant growth in this area, resulting in a continuing dialogue among regulators, scientists, elected officials, and members of the public regarding the animal waste generated by these dairies and its effect on water quality in the North Bosque River and ultimately Lake Waco, which is the City of Waco's municipal water supply.

The Coalition–because it did not exist at the time–did not submit any comments on the proposed Leyendekker permit, but later adopted Waco's comments. These comments complained that the application failed to adequately protect water quality and failed to comply with federal and state statutes and regulations designed to protect water quality. The executive director responded to Waco's comments and revised the draft permit to address some of Waco's concerns, but otherwise determined that the application and draft permit met the requirements of applicable law. Unsatisfied, the Coalition asked to intervene as a party in a contested-case hearing. In its hearing request, the Coalition described how three of its members were "affected persons" as defined by the Water Code because each had "a personal justiciable interest related to a legal right, duty, privilege, power, or economic interest affected by the application." The named members, The Ranch at Hico, LLC, Claude Kilpatrick, and Torrey Moncrief, own property downstream from the dairy along Gilmore Creek. The hearing request stated that "[t]he proposed discharge authorized by the Draft Permit, and resulting effects on water quality in Gilmore Creek, threaten the use and enjoyment of their property and their use of Gilmore Creek," including its use for fishing, recreation, religious activities, and stock watering.

4

The executive director filed a response in opposition to the Coalition's request for a contested-case hearing. *See* 30 Tex. Admin. Code § 55.209(d), (e). He concluded that the Coalition lacked standing because it had failed to identify any member with standing as an "affected person." *See* Tex. Admin. Code § 55.205(a)(1). The Coalition filed a reply, arguing that the proximity of three named members to the dairy (about two to three miles downstream) and their specific use of Gilmore Creek distinguished them from the general public and qualified them (and the Coalition by association) as an affected person.

The Commission subsequently considered the Coalition's hearing request and Leyendekker's permit application at a public meeting, denying the request without referring the matter to the State Office of Administrative Hearings for a contested case hearing. *See* 30 Tex. Admin. Code §§ 55.209(g), 55.211(b). In its order, the Commission stated that it had evaluated the request "under the requirements in the applicable statutes and Commission rules, including 30 Texas Administrative Code Chapter 55," and considered "all other timely filings in this matter, including the responses to the Coalition's hearing request filed by the Executive Director and the Office of Public Interest Counsel and the Coalition's reply." In the same order, the Commission revised and then adopted as revised the executive director's response to public comment, approved the permit amendment, and issued the permit as recommended by the executive director.

The Coalition sought judicial review of the Commission's order in Travis County district court, after its motion for rehearing was overruled by operation of law. *See* TEX. WATER CODE §§ 5.351, 5.354. The district court affirmed the Commission's order, and the Coalition appealed to the court of appeals. *See id.* § 5.355. Relying on its earlier decision in *Texas Commission on*

5

*Environmental Quality v. City of Waco*, 346 S.W.3d 781 (Tex. App.–Austin, 2011, pet. granted), the court of appeals reversed the Commission's order and remanded the case to the Commission for further proceedings. 347 S.W.3d at 381. The court held that "to the extent the Commission denied the Coalition's hearing request based on the premise that the amended Leyendekker permit would be 'more protective' of the environment than the current one, it acted arbitrarily by relying on a factor that is irrelevant to the Coalition's standing to obtain a hearing." *Id.* at 377. In *City of Waco*, however, we disagreed that replacing an existing water-quality permit with a more protective amendment was irrelevant to the Commission's determination of an interested party's statutory right to a contested case hearing. *See City of Waco*, ___ S.W.3d at ___.

II

The Coalition's claim of right to a contested case hearing is grounded in chapter 26 of the Water Code. Section 26.028(c) of that chapter generally extends the right to a public hearing in a permit application proceeding to a commissioner, the commission's executive director, or an "affected person," upon request. TEX. WATER CODE § 26.028(c); *see also id*. § 5.115(a) (defining affected person). Exempted from this general grant, however, are certain applications to renew or amend existing permits that do not seek either to increase the quantity of waste discharged or change materially the place or pattern of discharge and that maintain the quality of the waste to be discharged. *Id*. § 26.028(d). The Water Code expresses this right and exemption as follows:

> (c) Except as otherwise provided by this section, the commission, on the motion of a commissioner, or on the request of the executive director or any affected person, shall hold a public hearing on the application for a permit, permit amendment, or renewal of a permit.

6

(d) Notwithstanding any other provision of this chapter, the commission, at a regular meeting without the necessity of holding a public hearing, may approve an application to renew or amend a permit if:
(1) the applicant is not applying to:
 (A) increase significantly the quantity of waste authorized to be discharged; or
 (B) change materially the pattern or place of discharge;
(2) the activities to be authorized by the renewed or amended permit will maintain or improve the quality of waste authorized to be discharged;
(3) for NPDES permits, notice and the opportunity to request a public meeting shall be given in compliance with NPDES program requirements, and the commission shall consider and respond to all timely received and significant public comment; and
(4) the commission determines that an applicant's compliance history under the method for using compliance history developed by the commission under Section 5.754 raises no issues regarding the applicant's ability to comply with a material term of its permit.

TEX. WATER CODE § 26.028(c), (d).  Thus, under the statute, the Commission is to hold a public hearing on a permit application at the request of an affected person, but may approve an application to renew or amend a permit "at a regular meeting without the necessity of a public hearing" if (1) the applicant is not applying to significantly increase the discharge of waste or materially change the pattern or place of discharge, (2) the authorization under the permit will maintain or improve the quality of the discharge, (3) when required, the Commission has given notice, the opportunity for a public meeting, and considered and responded to all timely public comments, and (4) the applicant's compliance history raises no additional concerns. *Id*.  As we noted in *City of Waco*, the public hearing referenced in chapter 26 is, in the context of a permit application, "a contested case hearing under the Texas Administrative Procedure Act." *City of Waco,* ___ S.W.3d at ___ (citing TEX. WATER CODE § 5.551).

7

III

The Coalition argues that, as an affected person, it had the right to a contested case hearing because the Leyendekker Dairy sought a major amendment to its existing permit. Agency rules define a major amendment as "an amendment that changes a substantive term, provision, requirement, or a limiting parameter of a permit." 30 Tex. Admin. Code § 305.62(c)(1). In contrast, a minor amendment is one that "improve[s] or maintain[s] the permitted quality or method of disposal of waste" without significantly increasing the quantity of waste or materially changing the pattern or place of the waste's discharge. *Id*. § 305.62(c)(2). The Coalition submits that the Commission should have classified the dairy's application as a minor amendment, rather than a major amendment, to be consistent with its present position—that the additional restrictions and requirements imposed by the amended permit are more protective and will actually improve water quality despite the authorized increase in the dairy's herd. The Coalition concludes, however, that the Commission correctly labeled the permit application as a major amendment, thereby entitling it to a contested case hearing because it is also an affected person.

The Commission responds that its classification of the Leyendekker application as a major amendment is not a concession that the Coalition is entitled to a contested case hearing because the terms major and minor amendment are not mutually exclusive. The Commission submits that an application to amend may fit both definitions as in this case. The distinction between the two is primarily significant because a contested case hearing is generally not available for minor amendments. Tex. Admin. Code § 55.201(i)(1). But the classification of an amendment as major does not conversely establish the right to contested case hearing, the Commission submits, even

though a classification as minor may foreclose the right. In *City of Waco*, we agreed that there was "no express right to a contested case hearing merely because the applicant seeks a major amendment." *See City of Waco*, ___ S.W.3d at___ (citing 30 Tex. Admin Code § 55.201(i)).

The Coalition nevertheless asserts that the Commission abused its discretion by denying it the opportunity to intervene and participate in a contested case hearing on Leyendekker's amended permit application. But that opportunity depends on whether the proposed amendment is excepted from the Water Code's public hearing requirement. *See* TEX. WATER CODE § 26.028(c), (d). *In City of Waco*, we concluded that the application of the statute's exception to the public hearing requirement did not itself require a contested case hearing, but could instead be determined through a less formal, less expensive, and less time-consuming proceeding before the Commission. *See City of Waco*, ___ S.W.3d at ___ (citing *Collins v. Tex. Natural Res. Conservation Comm'n,* 94 S.W.3d 876, 884-85 (Tex. App.–Austin 2002, no pet). As in that case, the Coalition here had the comment period, the executive director's response, the request for a contested case hearing, and a public meeting in which to express its dissatisfaction with the proposed amendment. The Commission's executive director recognized four areas in which the Coalition disputed the effectiveness of the amended permit: (1) whether the compaction testing specifications comply with the applicable CAFO rules; (2) whether waste sampling requirements comply with CAFO rules; (3) whether buffer zone requirements would be met; and (4) whether the location and timing of soil sampling complies with the applicable protocol of the Natural Resource Conservation Service. There is no indication that the Commission refused to consider any evidence tendered to substantiate these asserted deficiencies.

The proposed amendment purports to conform to the numerous regulatory changes imposed on Texas dairy CAFOs in the North Bosque watershed since the issuance of the dairy's previous water-quality permit. It adds several new measures to strengthen the overall water-quality protections at the dairy, including reducing the possibility of discharges from the dairy's retention control structures by doubling their storage capacity and improving monitoring of sludge and water levels. New restrictions also aim to reduce the risk of runoff from waste application fields by expanding buffer zones and strictly managing nutrients applied to the soil.

The proposed amended permit does not seek to significantly increase or materially change the authorized discharge of waste. Neither does the Coalition argue any other factor to foreclose the Commission's discretion to consider the amended application at a regular meeting rather than after a contested case hearing. The Commission therefore did not abuse its discretion in denying the Coalition's request for a contested case hearing on Leyendekker's application for an amended permit.

The court of appeals' judgment remanding the matter to the Commission for further proceedings is accordingly reversed and judgment is rendered affirming the Commission's decision to deny the request for a contested case hearing.

_____
John P. Devine
Justice

Opinion Delivered: September 20, 2013