# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-02-00027-CV

---

**Robert L. Collins, Appellant**

**v.**

**Texas Natural Resource Conservation Commission and Cal-Maine
Partnership, Ltd., Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. 99-13369, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING**

---

B&N Poultry[1] applied to the TNRCC[2] for a permit to change from a dry waste-management system to an environmentally superior wet waste-management system utilizing compacted clay lined lagoons. Robert Collins, an organic farmer who lives 1.3 miles away from the proposed lagoons,

---

[1] B&N sold its operation to Cal Maine Partnership, which is the party to this suit. In this opinion, we will refer to both B&N and its successor-in-interest, Cal-Maine, as B&N.

[2] By statute effective September 1, 2001, the legislature changed the name of the Texas Natural Resource Conservation Commission to the Texas Commission on Environmental Quality, to be effective January 1, 2004. The statute granted the TNRCC authority to adopt a timetable for phasing in the change of the agency=s name, so that until January 1, 2004, the agency may perform any act authorized by law under either title. *See* Act of April 20, 2001, 77th Leg., R.S., ch. 965, ' 18.01, 2001 Tex. Gen. Laws 1985. On September 1, 2002, the agency began using its new name. In this opinion, we will refer to the agency as the Commission.

sought a contested case hearing to oppose the application. After considering the pleadings and attached evidence of Collins and the applicant, and allowing Collins to explain his opposition at two public meetings, the Commission determined that Collins was unlikely to be affected by the proposed lagoons and denied his hearing request. Collins sought judicial review of the Commission=s decision in a Travis County district court. *See* Tex. Water Code Ann. '' 5.351, .354 (West 2000). Collins claimed among other things that the Commission=s failure to grant him a contested case hearing is not supported by substantial evidence and that he was denied due process of law. The district court affirmed the Commission=s order. We find substantial evidence in the record to support the Commission=s decision to deny Collins=s hearing request under the applicable law and regulations and hold that Collins was afforded due process.

## BACKGROUND

B&N originally operated a poultry farm with a maximum capacity of approximately 500,000 hens on an 870-acre tract in Gonzales County. In May 1998, B&N applied for a permit to expand its poultry operation by approximately two million hens and to replace its existing dry waste-management system with a wet waste-management system utilizing non-discharge waste lagoons lined with compacted clay.[3]

---

[3] The permit application originally encompassed both the expansion and the new waste-management system. B&N eventually received Commission approval to build the expansion pursuant to an exemption to permitting procedures for certain animal feeding operations. *See* 30 Tex. Admin. Code '



106.161 (2002).  This appeal is therefore limited to Collins=s request for a contested case hearing on B&N=s application to change waste-management systems.

Robert Collins operates a small organic farm on a 209-acre tract located approximately 590 feet from B&N=s land at its closest point. After seeing a notice of B&N=s permit application in a local newspaper, Collins filed a written request for a contested case hearing, claiming that his land was adjacent to B&N=s property and that his groundwater resources and air quality, already adversely affected by B&N=s operations, would further deteriorate if the permit were granted. The Commission notified Collins that it would consider his request at its May 1999 meeting.

Shortly thereafter, the Commission=s Public Interest Counsel and Executive Director filed responses to Collins=s hearing request. Relying on Collins=s representations, each response stated that: (1) Collins is an affected person; (2) his request is reasonable; and (3) his request should be granted. *See* 30 Tex. Admin. Code '' 55.27, .29, .31 (2002). B&N then filed a response challenging Collins=s assertion that he would be affected by B&N=s proposed operation. B&N specifically disputed Collins=s claim that his property is adjacent to B&N=s property and submitted a map indicating that another tract of land, the APavlicek Property,@ is located between Collins=s land and B&N=s land.

A few weeks later, B&N filed a reply to the responses of the Public Interest Counsel and the Executive Director. In this pleading, B&N again contended that Collins is not an affected person within the meaning of section 55.29 of the administrative code. Particularly, B&N alleged that: (1) Collins=s home is more than 1.3 miles away from the nearest permanent odor source at the proposed operation; (2) neither Collins nor anyone else had previously complained about the existing operation; (3) the wind blows towards Collins=s property only about four percent of the time; (4) area groundwater will be protected by the clay-lined lagoons; and (5) general groundwater flow is not in the direction of Collins=s property. B&N also

4

challenged the reasonableness of Collins=s request for a hearing within the meaning of section 55.30 of the administrative code because: (1) the proposed expansion could be constructed without any permit if B&N continued to operate a dry litter system; and (2) the proposed wastewater-lagoon system is environmentally superior to a dry litter system. The attached map indicated that Collins=s property was 590 feet removed from B&N=s farm and that his residence was approximately 1.3 miles from B&N=s proposed site. B&N also attached a wind data chart and the affidavit of a professional engineer stating that the proposed lagoons would Alikely not result in degradation of the groundwater resources utilized by Mr. Robert Collins.@[4] On the same day, B&N filed a motion for continuance. The Commission granted B&N=s motion and carried the matter over to its next scheduled meeting in June 1999.

A short time later, B&N applied for and received Commission approval to build the proposed expansion continuing to utilize a dry waste-management system. *See* 30 Tex. Admin. Code ' 106.161(2002).

Before the June meeting, B&N, Collins, the Public Interest Counsel, and the Executive Director all filed additional pleadings. B&N bolstered its earlier claims that Collins was not an affected

---

[4] The affiant engineer reviewed several sources of information in forming his opinions, including technical portions of the permit application, water well reports and well logs from the vicinity, topographic maps of the area, and Texas Water Development Board reports on groundwater resources in the area. He detailed several features of the subsurface geology to support his ultimate conclusion that Collins=s groundwater would not be affected by the lagoons.

person and that his request was not reasonable by attaching aerial photos showing the distance between B&N's operations and Collins's property, along with the affidavit of another engineer stating that the proposed non-discharge clay lined lagoon system would be superior to the existing dry waste system. The Public Interest Counsel continued to support Collins's request for a contested case hearing, but the Executive Director changed his position and recommended that the hearing request be denied.

Collins appended to his additional pleadings photographs allegedly taken from Collins's land of the existing poultry operations and some new construction; affidavits of other nearby landowners stating that they have experienced odors and insects coming from B&N's operation; and a letter from an engineer that questioned the wisdom of using compacted clay liners because such liners are difficult to install correctly and are not as Astate of the art@ as geomembrane liners. The engineer's letter also opined that insects and odors would be better controlled if the lagoons were covered.

At the Commission's June meeting, Collins was given the opportunity to explain his request. Initially, he disputed the accuracy of the second map submitted by B&N.[5] The Commission referred the matter of the map's accuracy to the State Office of Administrative Hearings (SOAH) for a hearing in front of an administrative law judge (ALJ). Collins did not offer evidence at the SOAH hearing but did thoroughly cross-examine the witnesses put on by B&N. After the hearing, the ALJ issued a proposal for decision and findings of fact and conclusions of law indicating that B&N's map was accurate. The Commission then revisited Collins's request at its August meeting, where Collins was again allowed to explain his opposition to the wastewater-lagoon system. Based on the findings of the ALJ, the Office of

---

[5] The second map submitted by B&N had a scale indicating distances.

Public Interest Counsel reversed itself and recommended that Collins=s request be denied. The

Commissioners adopted the ALJ=s findings of fact and conclusions of law, denied Collins=s hearing request,

and remanded B&N=s application to the Executive Director, who approved it. Collins filed a motion for

rehearing, which was overruled by operation of law, and then sought judicial review. *See* Tex. Water Code

Ann. '' 5.351, .354. The district court affirmed the Commission=s denial of Collins=s hearing request.

## DISCUSSION

On appeal, Collins claims that: (1) the Commission=s failure to grant him a contested case

hearing is not supported by substantial evidence; (2) he was denied due process of law and therefore former

section 5.115 of the Texas Water Code, which authorized the Commission=s denial of his hearing request, is

unconstitutional as applied to him; and (3) the Commission erred in not providing findings of fact and

conclusions of law in its order denying Collins=s hearing request.

*Substantial Evidence*

**In conducting a substantial evidence review, we determine whether the evidence as
a whole is such that reasonable minds could have reached the same conclusion as the agency in
the disputed action.** *Stratton v. Austin Indep. Sch. Dist.***, 8 S.W.3d 26, 30 (Tex. App.C Austin
1999, no pet.). We may not substitute our judgment for that of the agency and may only consider
the record on which the agency based its decision.** *Id.* **The issue for the reviewing court is not
whether the agency reached the correct conclusion, but rather whether there is some reasonable
basis in the record for its action.** *City of El Paso v. Public Util. Comm=n***, 883 S.W.2d 179, 185

7

**(Tex. 1994). The findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise.** *Stratton*, **8 S.W.3d at 30.**

Before its amendment in 1999, section 5.115 of the Texas Water Code provided:

> The commission is not required to hold a hearing if the commission determines that the basis of the person=s request for a hearing as an affected person is not reasonable or is not supported by competent evidence.

Act of May 28, 1995, 74th Leg., R.S., ch. 882, ' 1, 1995 Tex. Gen. Laws 4380, 4381 (Tex. Water Code Ann. ' 5.115(a), since amended by Act of May 30, 1999, 76th Leg., R.S., ch. 1350, ' 1, 1999 Tex. Gen. Laws 4570).

Title 30, Chapter 55, Subchapter B, of the Texas Administrative Code implements the above quoted section of the Water Code:[6]

> (a) The determination of the validity of a hearing request is not, in itself, a contested case hearing subject to the APA. The Commission will evaluate the hearing request at the scheduled commission meeting and may:
>
> (1) determine that a hearing request does not meet the requirements of this subchapter and act on the application.
>
> . . . .
>
> (b) A request for a contested case hearing shall be granted if the request is:

---

[6] Title 30, Chapter 55, Subchapter B applies only to permit applications declared administratively complete before the effective date of the 1999 amendment to section 5.115 of the Water Code. *See* 30 Tex. Admin. Code ' 55.1(a), (b) (2002).

. . . .

    (2)   made by an affected person if the request:

        (A)   is reasonable;

        (B)   is supported by competent evidence . . . .

30 Tex. Admin. Code ' 55.27. Subchapter B also sets forth substantive criteria for determination of who qualifies as an Aaffected person@ and what constitutes a Areasonable request.@ *See id*. '' 55.29, .31. Each of these two code sections requires the Commission to consider Aall relevant factors@ and includes a nonexclusive list of such factors.

Collins claims that the Commission=s order is not supported by substantial evidence. We disagree. In its order denying Collins=s hearing request, the Commission stated that Athe request for hearing did not meet the requirements of Commission rules in Chapter 55, Subchapter B [of the administrative code].@ We will affirm this determination if there is substantial evidence in the record of any permissible ground set out in Subchapter B for denying Collins=s request, *i.e.*, that: (1) Collins is not an affected person, or (2) Collins=s hearing request was not reasonable, or (3) Collins=s hearing request was not supported by competent evidence. *See id*. '' 55.27, .29, .30.

An affected person is one who has a personal justiciable interest related to a legal right, duty, privilege, power, or economic interest affected by the application. *Id*. ' 55.29(a). An interest that is common to members of the general public does not qualify as a personal justiciable interest. *Id*. However, one does not need to show that she will ultimately prevail on the merits to qualify as an affected person. *See*

9

*United Copper Indus., Inc. v. Grissom*, 17 S.W.3d 797, 803 (Tex. App.CAustin 2000, pet. dism=d). The factors that the Commission must consider in determining whether Collins is an affected person include:

$ distance restrictions or other limitations imposed by law on the affected interest;

$ whether a reasonable relationship exists between the interest claimed and the activity regulated;

$ likely impact of the regulated activity on the health, safety, and use of property of the person;

$ likely impact of the regulated activity on use of the impacted natural resource by the person.

30 Tex. Admin. Code ' 55.29. Our review of the record indicates that the Commission was well within its discretion to determine that Collins is not an affected person. The map that the ALJ found to be accurate indicates that Collins=s property is not adjacent to B&N=s property and that his home is approximately 1.3 miles away from the proposed lagoons. Collins predicts that the lagoons will produce Anoxious odors.@ But a concentrated animal feeding operation, such as B&N=s farm, qualifies for a standard air permitCissued without the opportunity for a contested case hearingCif its permanent odor sources are at least half a mile from occupied residences and business structures. 30 Tex. Admin. Code ' 321.46(1)(A).

Collins also predicts that his groundwater will be polluted and submitted an affidavit of an engineer stating that clay liner systems are difficult to install and might fail. But the permit only authorizes a correctly installed lagoon system. The type of failure that Collins fears would actually be a permit violation. Moreover, the Commissioners had before them competent evidence that the environmentCincludingCollins=s land, health, and safetyCwould be *positively* impacted by changing from the existing dry waste management

10

to the clay lined lagoon system. By the time the Commission issued its order denying Collins=s hearing request, it had considered the detailed affidavits of two engineers indicating that the proposed clay lined lagoon system is environmentally superior to a dry waste system and that, in any event, Collins=s groundwater resources were very unlikely to be affected even by the failure of the lagoon system. We find substantial evidence in the record indicating that Collins is not an affected person and therefore supporting the Commission=s decision denying Collins=s hearing request.[7]

---

[7] Collins argues that *United Copper Industries v. Grissom*, 17 S.W.3d 797, requires us to reach a different result. We disagree. In that case, the Commission granted United Copper an air-quality permit allowing it to operate copper melting furnaces within two miles of Grissoms=s home. *United Copper*, 17 S.W.3d at 799. Grissom requested a contested case hearing, claiming that the plant might affect his health and the health of his two sons, all of whom suffered from serious asthmatic conditions. *Id*. at 800. United Copper=s own data, submitted with its application, indicated that its operations would cause increased levels of lead and copper in the air at Grissom=s home and the school attended by one of his sons. *Id*. at 800, 803. AConsidering Grissom=s unique health concerns@ we held that the Commission erred in determining that Grissom was not an affected person. *Id*. at 803.

In this case, however, the evidence before the Commission indicated that the lagoons would likely *reduce* odor emissions. Moreover, the only adverse health concern that Collins raisesCgroundwater contaminationCis based entirely on his prediction that the clay liners of the  lagoons will fail and his

11

*Due Process*

In his second issue, Collins argues that he was denied due process. Due process claims require a two-part analysis. We must first determine whether Collins has a liberty or property interest that is entitled to pre-deprivation procedural protection. If so, we must then determine what process is due. *See University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995). While the environmental damage and nuisance that Collins *predicts* would surely deprive him of his valuable property rights, we note that the permit does not authorize such failures. *See* 30 Tex. Admin. Code ' 305.122(c) (Athe issuance of a permit does not authorize any injury to persons or property or an invasion of any other property rights@). The permit itself requires an operation subject to oversight so that it will not deprive Collins of any concrete liberty or property interest. Mere speculation of failure in the face of conflicting evidence about the improved operation of the site under the permit does not deprive Collins of protected liberty or property rights.

Even if Collins=s speculations were construed as property or liberty interests, he was unquestionably afforded all the process he was due. What process is due is measured by a flexible standard that depends on the practical requirements of the circumstances. *See Than*, 901 S.W.2d at 930 (citing *Matthews v. Eldridge*, 424 U.S. 319 (1976)). The court must balance: (1) the government=s interest, including the fiscal and administrative burdens of additional or substitute procedural requirements; (2) the private interest that will be affected by the official action; and (3) the risk of an erroneous deprivation of such interests by the actual procedures used. *Id*. No matter how weighty the private interest is, due process

unsupported assumption that the failure will be of such magnitude as to contaminate his groundwater.

12

never requires all the trial-like procedures of a statutory contested case hearing. *See Texas Workers= Comp. Comm=n v. Bridge City*, 900 S.W.2d 411, 416 (Tex. App.C Austin 1995, writ denied).

We hold that Collins received all the process he was due. He filed several pleadings and submitted evidence. He participated in two Commission meetings where he was allowed to explain his opposition and respond to the contentions of B&N. When he disputed the accuracy of B&N=s map, the issue was referred to SOAH for a limited contested case hearing on the issue. In short, he was afforded ample opportunity for his concerns and request to be heard. He simply disagrees with the Commission=s decision.

*Findings and Conclusions*

In his third issue, Collins argues that the Commission erred in not including findings of fact and conclusions of law in its order denying him a contested case hearing. We note initially that the Commission adopted the findings and conclusions of the ALJ about the accuracy of the map. We construe Collins=s complaint to challenge the failure of the Commission to enter further findings of fact and conclusions of law on the ultimate issues of whether Collins is an affected person and whether his request for a hearing is reasonable and supported by competent evidence.

A motion for rehearing is a prerequisite to appeal a denial of a hearing request. *See* 30 Tex. Admin. Code '' 55.27(g), 80.271 (2002). Its purpose is to inform the agency of the claimed error and allow the agency the opportunity to correct the error or prepare to defend against it. *Hill v. Board of Trs. of the Ret. Sys.*, 40 S.W.3d 676, 678 (Tex. App.C Austin 2001, no pet.). We have specifically held that a party to a contested case hearing must complain about a lack of findings of fact and conclusions of law in its

13

motion for rehearing in order to preserve that complaint for appeal. *BFI Waste Sys., Inc. v. Martinez Envtl. Group*, No. 3-02-218-CV, slip op. at 11, 2002 Tex. App. Lexis 8216 (Tex. App.CAustin Nov. 21, 2002, no pet. h.). Under the regulations applicable to this case, the same procedures for filing a motion for rehearing after a contested case hearing apply when a hearing request is denied. *See* 30 Tex. Admin. Code '' 55.27(g), 80.271 (2002). Because Collins did not complain in his motion for rehearing about the Commission=s failure to make findings and conclusions, we hold that this issue was not preserved for review.

But even had Collins preserved his complaint, he still could not prevail. The determination of the validity of a hearing request is not, in itself, a contested case hearing subject to the Administrative Procedure Act, 30 Tex. Admin. Code ' 55.27(a) (2002), and therefore section 2001.141(b) of the government code requiring findings of facts and conclusions of law does not apply.

## CONCLUSION

There is substantial evidence in the record supporting the Commission=s decision to deny Collins=s request for a contested case hearing. Furthermore, Collins was afforded all the process he was due; he failed to preserve his complaint about the lack of findings and conclusions, which were not required. We therefore affirm the judgment of the trial court affirming the Commission=s order.

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Patterson

Affirmed

Filed:   December 31, 2002

Publish