# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-000102-CV

**Sierra Club, Appellant**

**v.**

**Texas Commission on Environmental Quality and Waste Control Specialists, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. D-1-GN-08-003021, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## O P I N I O N

Sierra Club appeals from a judgment upholding the Texas Commission on Environmental Quality's (TCEQ) denial of Sierra Club's request for a contested-case hearing in a licensing matter before the agency. On appeal, Sierra Club argues that it was entitled to a contested-case hearing because its request complied with TCEQ regulations and demonstrated that at least one member of its organization has an affected justiciable interest in the agency's proposed action. Sierra Club also complains that the district court erred by "ignoring" Sierra Club's newly discovered evidence. We will affirm the district court's judgment.

## BACKGROUND

Appellee Waste Control Specialists (WCS) is a waste-control company specializing in the treatment, storage, and disposal of radioactive, hazardous, and mixed waste. Since 1997, WCS has held licenses to store, process, and manage certain types of radioactive materials at a 36-acre

waste-disposal facility in Andrews County, Texas. The disposal facility, which is situated on a 14,900-acre former ranch that extends into Lea County, New Mexico, is about 250 feet east of the Texas–New Mexico state line, five miles east of Eunice, New Mexico, and thirty miles west of Andrews, Texas.[1]

In June 2004, WCS applied to the Texas Department of State Health Services (TDSHS) for a license to construct a 16-acre landfill on its Andrews County property to dispose of material it was holding under an existing license to collect, process, and store by-product material.[2] The by-product material WCS seeks to dispose of comes from a U.S. Department of Energy facility in Fernald, Ohio that had produced high-purity uranium metal for U.S. defense programs since 1952. The Fernald facility was closed in 1989 and designated a federal "Superfund" site under the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), Pub. L. No. 96-510, 94 Stat. 2767 (codified as amended at 42 U.S.C. §§ 9601–9626).[3] In compliance

---

[1] This facility has been and is the subject of numerous lawsuits. *See, e.g.*, *In re Sierra Club*, 420 S.W.3d 153 (Tex. App.—El Paso Nov. 28, 2012, orig. proceeding); *Sierra Club v. Andrews Cnty.*, 418 S.W.3d 711 (Tex. App.—El Paso 2013, pet. filed); *Texas Comm'n on Envtl. Quality v. Sierra Club*, No. 03-12-00625-CV, 2014 WL 902513 (Tex. App.—Austin Mar. 7, 2014, no pet. h.); *In re Sierra Club*, No. 03-12-00712-CV, 2012 WL 6554812 (Tex. App.—Austin Dec. 14, 2012, orig. proceeding, mem. op.); *In re Sierra Club*, No. 08-12-00282-CV, 2012 WL 5949789 (Tex. App.—El Paso Nov. 28, 2012, orig. proceeding, mem. op.); *Texas Comm'n on Envtl. Quality v. Sierra Club*, No. 03-12-000335-CV (Tex. App.—Austin) (pending).

[2] "By-product material" is radioactive tailings or wastes produced in connection with uranium or thorium ore processing. *See* Tex. Health & Safety Code § 401.003(3)(B) (defining "by-product material"); 25 Tex. Admin. Code § 289.260 (2007) (TDSHS, Licensing of Uranium Recovery and Byproduct Material Disposal Facilities).

[3] CERCLA was "designed to promote the 'timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009). A CERCLA

with a cleanup plan established pursuant to CERCLA requirements, Fernald's uranium by-product waste—approximately 8,900 cubic yards of slurry—was stabilized with "flyash and Portland cement," and the resulting "concrete monoliths" were then sealed in large (6x6 feet), one-inch thick cylindrical carbon-steel containers meeting federal regulations for shipping radioactive materials, *see* 49 C.F.R. §§ 171.1–180.605 (Department of Transportation, Hazardous Materials Regulations), and transported to WCS's Andrews County facility on flatbed trailers. WCS's landfill application to TCEQ, which included plans for the design, construction, operation, and future closure of the by-product disposal facility, proposed the construction of a 16-acre below-grade landfill that would consist of six cells—each lined with clay, synthetic liners, leak-detection systems, and leachate-collection systems—designed to hold the carbon-steel cylinders shipped from the Fernald site. WCS's proposed design for its facility included various other safeguards, including berms to divert and collect rainwater, groundwater-monitoring systems, surface-water monitoring systems, and air-quality monitoring systems.

While TDSHS was conducting its technical review of WCS's application, the Legislature transferred regulatory responsibility for issuance of by-product disposal licenses to TCEQ, which continued and subsequently completed the technical review of WCS's application under TDSHS regulations. *See* Tex. Health & Safety Code § 401.2625 (granting to TCEQ the "sole and exclusive authority to grant, deny, renew, revoke, suspend, amend, or withdraw licenses for source material recovery and processing or for storage, processing, or disposal of byproduct material"); *see also id.* § 33(k)(1) (requiring TCEQ to complete ongoing reviews using TDSHS

---

"Superfund site" is a place considered a national priority for environmental remediation because of known or threatened releases of hazardous substances at that site. *See* 42 U.S.C. §§ 9601–9626.

3

regulations); 25 Tex. Admin. Code §§ 289.3–.301 (2007) (TDSHS, Radiation Control) (TDSHS radiation-control regulations). After completing the technical review of WCS's application in accordance with statutory and regulatory requirements, including an environmental analysis, TCEQ declared WCS's application administratively complete and issued a draft license for public notice in October 2007.

Appellant Sierra Club, among others, timely submitted written comments to the draft license that, generally stated, challenged WCS's characterization of the site's hydrology, geology, sedimentology, and hydrogeology; raised concerns regarding what Sierra Club considered to be a lack of site data and improper groundwater monitoring plans; and highlighted what it considered to be the application's deficient analysis of the impact of high winds that can occur at the site. Sierra Club also requested a contested-case hearing on the merits of WCS's application, asserting that two of its members who lived in Eunice, New Mexico and relied on water wells in the area would be affected by the issuance of the proposed license. Specifically, Sierra Club argued that the proposed permit would harm Gardner, who lives and operates a feed store business four miles from the proposed facility and owns a florist shop in downtown Eunice, in the following ways:

- "Negative publicity surrounding the opening of the radioactive waste site" will keep people from doing business with her;

- "[a]ny dispersal of radioactive material from the site" or any traffic accident "involving toxic or radioactive material" will potentially affect her business and health because she travels on a road near the proposed facility;

- any groundwater contamination from the facility will contaminate the alfalfa she grows for her feed business and livestock because the water well she uses is "potentially hydrologically connected to groundwater resources" in the vicinity of the proposed site;

4

• the possibility that "waste from the recently permitted uranium enrichment plant" in Gardner's home state of New Mexico could be disposed of at the proposed WCS Texas site because that waste might be by-product material—even though Sierra Club does not believe this would be authorized under the proposed license—which would affect Gardner because that waste "could travel near" Gardner's home and businesses;

• any off-site and on-site accidents that occur in connection with the railcar transportation of by-product materials would affect Gardner because the railroad passes "right near an area that Ms. Gardner often travels by";

• the hydrological formations underlying her home and businesses also underlie the proposed waste facility; and

• "[h]igh, single direction winds traveling westward from the site" could affect Gardner's property, livelihood, and health because those winds might disperse "radioactive materials and surface water contaminated by radioactive waste."

Sierra Club's request asserted similar adverse effects from the proposed license regarding its other member, Williams, including alleging that her home is near the railway line and road where traffic is likely to be heavy, that wind dispersion of radioactive materials would reach her, that groundwater contamination would affect her wells, and that she and her family have to travel on roads that pass directly by the proposed site to reach shopping and medical facilities.

Both TCEQ's executive director and WCS recommended that Sierra Club's hearing request be denied. The Office of Public Interest Counsel[4] recommended granting the hearing request because it felt that Sierra Club had complied with the requirements for associational standing. After a public hearing addressing these and other public comments and hearing requests, TCEQ's commissioners voted to deny Sierra Club's request for a contested-case hearing and grant the requested license to WCS—License R05807.

---

[4] The Office of Public Interest Counsel "represent[s] the public interest as a party to matters before [TCEQ]." Tex. Water Code § 5.271.

5

After exhausting its administrative remedies, Sierra Club filed this suit for judicial review in Travis County District Court, asking the district court to reverse and remand TCEQ's decision to deny Sierra Club's hearing request and to grant the by-product license or, in the alternative, to remand the matter to TCEQ for a contested-case hearing on Sierra Club's hearing request. During the district court proceedings, Sierra Club filed a motion for partial summary judgment on the issue of whether TCEQ erred in denying Sierra Club's request for a contested-case hearing. Although neither TCEQ nor WCS filed cross-motions for summary judgment, they fully briefed the issue, and the record indicates that the district court treated the subsequent summary-judgment hearing as a full trial on the merits. Specifically, the district court denied Sierra Club's summary-judgment motion and ordered that Sierra Club take nothing on its claims related to TCEQ's denial of its hearing request. In response, Sierra Club filed a motion for reconsideration and, while that motion was pending, filed a motion seeking to present new evidence it alleged to have recently discovered—i.e., two internal TCEQ memos that were not part of the administrative record—relating to its hearing request and the permit. In a final order, the district court denied Sierra Club's pending motions, reaffirmed its judgment against Sierra Club, and granted TCEQ's and WCS's pending pleas to the jurisdiction and motions to dismiss. It is from this final order that Sierra Club now appeals.

**ANALYSIS**

On appeal, Sierra Club challenges (1) TCEQ's decision to deny its contested-case hearing request and (2) the district court's refusal to consider Sierra Club's newly discovered evidence.

6

**Did TCEQ err in denying Sierra Club's hearing request?**

Sierra Club argues that it was error for TCEQ to deny its request for a contested-case hearing because Sierra Club's request complied with the relevant statutory and regulatory requirements for a contested-case hearing request and demonstrated that at least one of its members has a justiciable interest affected by TCEQ's proposed permit. *See* 30 Tex. Admin. Code §§ 55.250–.256 (Requests for Contested Case Hearings).[5] Such a facially conforming request, Sierra Club argues, is not subject to any deeper inquiry, especially into any matters that might go to the underlying merits of the license—e.g., the likely effects of the proposed license permit on the requestor—because those merits issues are properly the subject of a contested-case hearing. Relatedly, Sierra Club argues that TCEQ was required to hold a contested-case hearing on any fact issues raised by Sierra Club's hearing request—i.e., TCEQ does not have the authority to resolve factual disputes on its own. We disagree.

*Contested-case hearing requests*

The Texas Radiation Control Act (TRCA) governs the development, use, storage, processing, and disposal of radioactive materials in Texas, including the by-product material at issue in this case. *See* Tex. Health & Safety Code §§ 401.001–.002 (TRCA's policy and purposes); *see also id.* §§ 401.261–.272 (TRCA provisions specific to by-product materials). TRCA gives TCEQ the sole authority over licenses "for storage, processing, or disposal of by-product material." *See id.* § 401.2625. Under TRCA, TCEQ must hold a contested-case hearing on the merits of an

---

[5] All citations to Title 30 of the Texas Administrative Code are to rules promulgated by TCEQ.

7

application for a by-product disposal license if a "person affected" requests such a hearing. *See id.* § 401.264(a). A "person affected" is "a person who demonstrates that the person has suffered or will suffer actual injury or economic damage." *See id.* § 401.003(15). Relatedly, TCEQ's enabling statute, Chapter 5 of the Texas Water Code, prohibits TCEQ from "grant[ing] a request for a contested case hearing unless the commission determines that the request was filed by an affected person,"[6] and directs TCEQ to adopt rules specifying the factors that must be considered in determining affected-person status. *See* Tex. Water Code § 5.556; 30 Tex. Admin. Code § 55.256 (Determination of Affected Person). Thus, the critical or threshold question in contested-case hearing requests is whether the person requesting the hearing is an "affected person."[7] *See Texas Comm'n on Envtl. Quality v. City of Waco*, 413 S.W.3d 409, 417 (Tex. 2013) (describing question as "threshold").

---

[6] An "affected person" under the Water Code is "a person who has a personal justiciable interest related to a legal right, duty, privilege, power, or economic interest affected by the administrative hearing. An interest common to members of the general public does not qualify as a personal justiciable interest." Tex. Water Code § 5.115(a). Although this definition differs from TRCA's, they can (and should) be read together to require hearing requestors to establish that they have standing in the matter: "a concrete and particularized injury in fact, not common to the general public, that is (1) actual or imminent; (2) fairly traceable to the issuance of the permit as proposed; and (3) likely to be redressed by a favorable decision on its complaint." *Texas Comm'n on Envtl. Quality v. City of Waco*, 413 S.W.3d 409, 417 (Tex. 2013).

[7] TCEQ rules governing contested-case hearing requests also require that the request be in writing, identify the personal justiciable interest affected by the application, including the requestor's location and distance relative to the proposed activity, and how and why the requestor will be affected by the activity in a manner not common to members of the general public. *See* 30 Tex. Admin. Code § 55.251(c)(2) (Request for Contested Case Hearing, Public Comment). Further, when a group files a hearing request, such as Sierra Club did here, the rules require that group to show that at least one of its members is an "affected person," the interests the organization seeks to protect are germane to the organization's purpose, and the claim or relief requested does not require the participation of the individual. *See id.* § 55.252 (Request by Group or Association).

Whether a requestor is an "affected person" is principally controlled by the factors created by TCEQ pursuant to statutory directive:

> (a)　For any application, an affected person is one who has a personal justiciable interest related to a legal right, duty, privilege, power, or economic interest affected by the application. An interest common to members of the general public does not qualify as a personal justiciable interest.
>
> . . .
>
> (c)　All relevant factors shall be considered, including, but not limited to, the following:
>
>> (1)　whether the interest claimed is one protected by the law under which the application will be considered;
>> (2)　distance restrictions or other limitations imposed by law on the affected interest;
>> (3)　whether a reasonable relationship exists between the interest claimed and the activity regulated;
>> (4)　likely impact of the regulated activity on the health, safety, and use of property of the person;
>> (5)　likely impact of the regulated activity on use of the impacted natural resource by the person; and
>> (6)　for governmental entities, their statutory authority over or interest in the issues relevant to the application.

30 Tex. Admin. Code § 55.256. If, upon consideration of these factors at a Commission meeting,[8] the TCEQ commissioners determine that the person seeking the contested-case hearing is an affected person and otherwise meets the regulatory requirements regarding contested-case hearings, the commissioners must grant the hearing request and refer the application to SOAH for a contested-case

---

[8] Upon receiving a hearing request, TCEQ's executive director must schedule the hearing request for consideration at a commission meeting and allow the executive director, OPIC, and the permit applicant to file responses to the hearing request, and the hearing requestor an opportunity to reply. *See id*. § 55.254(c)(2), (e)–(f) (Hearing Request Processing).

hearing. *See id.* § 55.255(a)(3) (Commission Action on Hearing Request). Conversely, if the TCEQ commissioners determine that the requestor is not an affected person or that the hearing request does not otherwise meet the regulatory requirements, the commissioners may, as they did here, deny the hearing request and act on the permit application without a contested-case hearing, *see id.* § 55.255(a)(1), or they may schedule additional public hearings before acting on the application, *see id.* § 55.255(a)(2).

### *Standard of Review*

Although the TRCA waives sovereign immunity for judicial review of a TCEQ affected-person determination, *see* Tex. Health & Safety Code § 401.264(e) (making affected-person determination in by-product licensing matters subject to judicial review), it does not provide a standard of review for that determination. *Cf. id.* § 401.240 (mandating "substantial evidence" review for TCEQ actions in low-level radioactive waste licensing matters). Nevertheless, in two recent decisions involving similar issues—i.e., TCEQ denials of contested-case hearing requests in licensing matters where no standard of review was specified by the underlying statute—the Texas Supreme Court reviewed TCEQ's decisions to deny the hearing requests for an abuse of discretion. *See City of Waco*, 413 S.W.3d at 411, 420, 424 (referring to discretion TCEQ enjoys in determining need for contested-case hearing and holding that TCEQ did not abuse that discretion); *see also Texas Comm'n on Envtl. Quality v. Bosque River Coal.*, 413 S.W.3d 403, 404 (Tex. 2013) (describing its decision in *City of Waco* as concluding that TCEQ "did not abuse its discretion in denying a contested case hearing to an interested party, who claimed a right to such a hearing under

10

the Texas Water Code").[9] TCEQ's discretion in this matter arises generally from TCEQ's statutorily granted exclusive jurisdiction over certain types of permits for regulated activities—here the exclusive jurisdiction to issue by-product disposal licenses, *see* Tex. Health & Safety Code § 401.2625—and more specifically from its authority to determine the need for a contested hearing on the merits of any license application under its jurisdiction. *See id.* § 401.264 (requiring TCEQ to determine need for contested-case hearing, including affected-person status); Tex. Water Code § 5.115(a) (directing TCEQ to adopt factors it must consider in determining affected-person status); *see also* Tex. Water Code § 5.556 (allowing reconsideration of decision to hold a contested-case hearing and specifying that TCEQ must determine affected-person status); *City of Waco*, 413 S.W.3d at 420 (noting "the discretion the statute confers on [TCEQ] in determining the need for a [contested-case] hearing").

The Legislature has granted this discretion to TCEQ in part because of TCEQ's expected expertise in the subject matter of the licenses under its jurisdiction. *See Gerst v. Nixon*, 411 S.W.2d 350, 360 n.8 (Tex. 1966). But that expected expertise has value only if it is used as

---

[9] Although *Bosque* and *City of Waco* were ultimately decided under statutory hearing exceptions that are not applicable to by-product licensing cases, *see* Tex. Water Code § 26.028(d) (regarding water-quality permits), they nevertheless inform our decision here. *City of Waco* discusses with approval a prior opinion from this Court addressing a standard of review for TCEQ's disposition of a contested-case hearing request. *See City of Waco*, 413 S.W.3d at 423–24 (citing *Collins v. Texas Natural Res. Conservation Comm'n*, 94 S.W.3d 876 (Tex. App.—Austin 2002, no pet.)). Further, the contested-case hearing framework analyzed in the *City of Waco* and *Bosque* is the framework applicable to all hearing requests under TCEQ's jurisdiction, including provisions from Chapter 5 of the Water Code and TCEQ regulations in Chapter 55 of Title 30 of the Texas Administrative Code. *See Texas Comm'n on Envtl. Quality v. Bosque River Coal.*, 413 S.W.3d 403, 406–09 (Tex. 2013); *City of Waco*, 413 S.W.3d at 416–25. As such, and given the lack of supreme court jurisprudence in this area, these two recent opinions firmly guide our disposition of this appeal.

the Legislature has directed. *Id.* Thus, an agency abuses its discretion in making a decision if it "(1) fails to consider a factor the Legislature directs it to consider; (2) considers an irrelevant factor; or (3) weighs only relevant factors that the Legislature directs it to consider but still reaches a completely unreasonable result." *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 184 (Tex. 1994) (citing *Gerst*, 411 S.W.2d at 360 n.8); *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985) (the test for an abuse of discretion is whether "the trial court acted without reference to any guiding rules and principles" or "whether the act was arbitrary or unreasonable").

TCEQ's discretion over contested-case hearing requests naturally includes its "threshold" determination of whether the person seeking the hearing is an affected person. *See City of Waco*, 413 S.W.3d at 410, 417. And in making that particular decision, TCEQ enjoys the discretion to weigh and resolve matters that may go to the merits of the underlying application, including the likely impact the regulated activity—here, underground disposal of by-product material—will have on the health, safety, and use of property by the hearing requestor and on the use of natural resources. *See* 30 Tex. Admin. Code § 55.256(c); *City of Waco*, 413 S.W.3d at 420 (noting overlap between affected-person factors and exemption found to be dispositive in that case). TCEQ's inquiry into these and the other factors may include reference to the permit application, attached expert reports, the analysis and opinions of professionals on its staff, and any reports, opinions, and data it has before it. *See City of Waco*, 413 S.W.3d at 420–21 (describing these evidentiary items as relevant to inquiry and holding that there was evidence in record to support TCEQ's determination). And importantly, the existence of substantial evidence in the record supporting TCEQ's decision is a factor—often a dispositive factor—in determining whether

12

TCEQ abused its discretion. *See id.* at 424–25; *see also Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 35 (Tex. 2010) (per curiam) (holding that trial court's forum-non-conveniens dismissal "was not an abuse of discretion in light of the evidence before it"); *Texas Health Facilities Comm'n v. Charter Med.-Dallas,* Inc., 665 S.W.2d 446, 454 (Tex. 1984) (noting that "the existence of substantial evidence has been equated with fair and reasonable conduct on the part of the agency," while "agency decisions that are unsupported by substantial evidence have been deemed arbitrary and capricious"); *cf.* Tex. Health & Safety Code § 401.240 (making affected-person determination subject to "substantial evidence" review). This is so regardless of whether TCEQ held an evidentiary hearing, as long as the hearing requestor was afforded its regulatory rights to express his dissatisfaction with the proposed license and the agency did not refuse to consider the evidence offered in support of that dissatisfaction. *See Bosque River*, 413 S.W.3d at 408 (noting, in its determining of whether TCEQ abused discretion in denying hearing request, that there was "no indication that [TCEQ] refused to consider any evidence tendered to substantiate the[] asserted deficiencies" in requested permit); *City of Waco*, 413 S.W.3d at 423–24 (reversing contrary holding in the underlying opinion while citing with approval *Collins v. Texas Natural Res. Conservation Comm'n*, 94 S.W.3d 876, 884–85 (Tex. App.—Austin 2002, no pet.), that agency's denial of hearing request was supported by substantial evidence regardless of fact that evidentiary hearing not held).

### *TCEQ's evaluation of Sierra Club's hearing request*

Our review of the record indicates that TCEQ was within its discretion to determine that Sierra Club's members were not affected persons. The record indicates that, upon receipt of Sierra Club's hearing request, the Executive Director set the matter for consideration at a

13

TCEQ meeting, allowed responses, and allowed Sierra Club to file a reply to those responses. In considering the request, TCEQ had before it, among other items, the Executive Director's response, the application, and an environmental analysis conducted by TCEQ staff and the Bureau of Economic Geology at The University of Texas at Austin. Among many other things, there was evidence in the record that:

- Gardner and Williams live more than three miles from the proposed facility and neither "work or spend any substantial time in or around the [proposed] facility";

- the proposed license complies with Texas statutes and rules regarding migration of radioactive materials from floods, high winds, railway accidents, and traffic accidents;

- the application provides all required information on the characterization of the geology and hydrology of the proposed site to show that the proposed activities would not affect the area groundwater;

- Gardner's and Williams's concerns about general contamination in Eunice and traffic accidents are interests common to the members of the general public;

- computer modeling done by WCS and by TCEQ staff in reviewing WCS's application "suggest[s] that there will be no detrimental radiological impact to a potential off-site resident at the property boundary—even less so for those residing in Eunice, New Mexico";

- because TCEQ is not authorized to regulate or control traffic and the draft license does not authorize receipt of materials by rail, concerns about traffic or railway accidents could not be addressed in a contested-case hearing;

- a contested-case hearing could not address concerns regarding negative publicity because the activity is regulated to ensure the protection of the environment and health and safety, not manage publicity;

- Gardner and Williams live west of the proposed facility, and the groundwater flow is to the south/southwest;

- independent modeling by both WCS and TCEQ indicates that "the proposed facility would contain and isolate by-product wastes for at least 200 years under conservative assumptions";

14

- prevailing winds in the area are southerly and shifting from the north in winter, while Gardner and Williams live to the west of the proposed facility;

- modeling indicates "no detrimental impact to a potential off-site resident at the property boundary";

- the draft permit "prohibits disposal of bulk non-containerized by-product material to address, in part, the concerns about assessment of worst-case wind conditions";

- the application includes appropriate characterizations of meteorological and climate conditions at the proposed site;

- the proposed design includes "a run-on control berm to direct water away from the operating disposal facility, final grading after closure to direct run-off away from the closed facility, and drainage controls within the disposal facility";

- the draft license addresses weather events at the site to be protective of human health and the environment; and

- the main surface water drainage in the area is a "southward draining ephemeral stream about three miles west of the proposed facility and is situated between the facility" and Eunice.

The above information supports a conclusion that WCS's application for a by-product disposal license met the statutory requirements for such a facility and, more importantly, that the actual operation of the facility as licensed is not likely to adversely contaminate the groundwater, surface water, air, or soils in the region with radioactive material, at least not in amounts that are prohibited under the law. For that reason, it would have been reasonable, and thus within TCEQ's discretion, to conclude that Gardner and Williams are not affected persons because the licensed activity will have minimal effect on their health, safety, use of property, and use of natural resources. *See* 30 Tex. Admin. Code § 55.256(c)(4)–(5). Likewise, it would have been reasonable for TCEQ to determine that Gardner's and Williams's stated concerns over possible traffic and railway accidents involving by-product materials were not reasonably

15

related to the disposal of byproduct at the WCS site because TCEQ has no jurisdiction over the transportation of radioactive materials and because the permit does not allow WCS to receive by-product material by rail. *See id.* § 55.256(c)(3). Relatedly, it would have been reasonable for TCEQ to determine that Gardner is not an affected person given that her concern regarding the effects of possible negative publicity on her business is not reasonably related to the WCS facility because the relevant regulations involve public health, safety, and the environment—not publicity. *See id.* Finally we would note, as did the Executive Director, that Gardner's and Williams's concerns about the licensed activity are shared by the general public. *See id.* In sum, we cannot say that TCEQ abused its discretion in deciding that neither Gardner nor Williams is a person who would be affected by the proposed permit under the relevant factors. Accordingly, it was within TCEQ's discretion to deny the hearing request, *see* Tex. Health & Safety Code § 401.264 (requiring TCEQ to hold contested-case hearing regarding by-product license if requested by person affected), and in fact, it would have been an abuse of TCEQ's discretion to grant the hearing request upon such a determination, *see* Tex. Water Code § 5.115 ("The commission may not grant a request for a contested case hearing unless the commission determines that the request was filed by an affected person . . . ."). We overrule Sierra Club's first issue on appeal.[10]

---

[10] Although Sierra Club's stated issue on appeal is whether it was entitled to a contested-case hearing simply because it submitted a hearing request that met the applicable statutes and regulations, our discussion above of *City of Waco* and *Bosque* makes it clear this cannot be the end of our analysis. Accordingly and because this case was submitted before the supreme court issued these decisions, we have addressed this as an appeal challenging the overall propriety of TCEQ's denial.

**Sierra Club's "new evidence"**

In its second issue, Sierra Club challenges the district court's denial of its "Motion for Remand to Consider Material New Evidence." The new evidence offered by Sierra Club in this motion consisted of two internal TCEQ memos written in 2007 by TCEQ staff members.[11] Sierra Club contends that these two memos reveal that the author of each memo opposed issuance of the by-product disposal license to WCS because the author felt that WCS had failed to comply with regulatory requirements. Sierra Club argues that this type of information is material to the WCS license application and, as such, should have factored into TCEQ's evaluation of its hearing request; thus, Sierra Club maintains, the district court should have granted its request to remand the matter to TCEQ. We disagree.

Sierra Club based its motion for remand—and its challenge on appeal—on section 2001.175(c) of the Administrative Procedure Act (APA), which allows the reviewing court to remand to the underlying agency for evaluation of new evidence under certain circumstances:

> A party may apply to the court to present additional evidence. If the court is satisfied that the additional evidence is material and that there were good reasons for the failure to present it in the proceeding before the state agency, the court may order that the additional evidence be taken before the agency on conditions determined by the court. The agency may change its findings and decision by reason of the additional evidence and shall file the additional evidence and any changes, new findings, or decisions with the reviewing court.

---

[11] Sierra Club's motion to the district court urged consideration of additional new evidence, but it limits its appeal to the two memos addressed here.

Tex. Gov't Code § 2001.175(c). But even if we assume without deciding that these two memos are material and that Sierra Club had good reasons for its failure to present the evidence to TCEQ, *see id.*, section 2001.175 simply does not apply to the circumstance presented here. Section 2001.175 is in Subchapter G of the APA, which is titled, "Contested Cases: Judicial Review," *see id.* §§ 2001.171–.178. By its own terms, Subchapter G applies only to judicial review from contested-case hearings: "A person who has exhausted all administrative remedies available within a state agency and who is aggrieved *by a final decision in a contested case* is entitled to judicial review under this chapter." *Id.* § 2001.171 (emphasis added). TCEQ's evaluation of Sierra Club's hearing request and its decision to deny that hearing request is not a contested-case hearing subject to the APA. *See* 30 Tex. Admin. Code § 55.255(a) ("The determination of the validity of a hearing request is not, in itself, a contested case subject to the APA."); *City of Waco*, 413 S.W.3d at 417. Accordingly, it was not error for the district court to refuse to remand the case under APA section 2001.175(c).

Even if section 2001.175 applied here, however, we would not agree that the proffered evidence is material to TCEQ's decision on the hearing request. *See* Tex. Gov't Code § 2001.175(c) (requiring reviewing court be satisfied that new evidence is material). Additional evidence is material under this provision if, among other considerations, its presentation to the agency could have caused the agency to reach a contrary conclusion. *See Texas Oil & Gas Corp. v. Railroad Comm'n*, 575 S.W.2d 348, 352 (Tex. Civ. App.—Austin 1978, no writ). As noted by Sierra Club in its appellate brief here and in its motion for partial summary judgment to the district court, the TCEQ commissioners were aware of dissent from some TCEQ staff: one of the TCEQ commissioners expressed concern in the TCEQ meeting that agency staff members

18

had raised questions in the media about WCS's application and about whether TCEQ was suppressing full review of the application. Stated another way, even without the memos in front of them, the TCEQ commissioners were aware that some TCEQ staff disagreed with the Executive Director's recommendation to issue the license. Accordingly, we cannot say that having these two staff memos in evidence would have caused the agency to reach a contrary conclusion. Finally, we also note that Sierra Club's motion offers no explanation for why it failed to present the evidence to TCEQ. *See* Tex. Gov't Code § 2001.175(c) (requiring "good reasons for the failure to present" evidence to agency). Instead, Sierra Club simply asserted to the district court that it had "become aware of new, material evidence" since the district court's judgment. On that basis alone, and again assuming that section 2001.175 would even apply here, the district court could have denied Sierra Club's motion.

We overrule Sierra Club's second issue on appeal.

## CONCLUSION

Having overruled both of Sierra Club's issues on appeal, we affirm the district court's judgment.

_____
Jeff Rose, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed:   April 4, 2014

19