# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-16-00724-CV

**Ranna & Company, LLC, Appellant**

**v.**

**Texas Commission on Environmental Quality, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. D-1-GN-13-001322, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This is an appeal from the judgment of the district court of Travis County in a suit for judicial review of a decision of the Executive Director (the Director) of the Texas Commission on Environmental Quality (the Agency). Appellant is Ranna & Company, LLC (Ranna). This Court will affirm the judgment of the district court.

By Agency rule a municipal utility district must obtain the Director's approval before spending tax revenue to reimburse a developer for acquisition of facilities. *See* 30 Tex. Admin. Code § 293.83(b) (2018) (Texas Comm'n on Envt'l Quality, District Use of Surplus Funds for Any Purpose and Use of Maintenance Tax Revenue for Certain Purposes). In 2009, Fort Bend County Municipal Utility District No. 2 (the District) sought approval to use up to $800,000 in tax revenue to obtain either an easement or fee simple title to a 4-acre detention pond lying within a 28-acre tract.

The Agency received material from both the District and the landowner, Ranna. After review, the application was approved in the sum of $37,551 as payment either for an easement on the pond or for fee ownership. Displeased with the sum approved, Ranna sought review of the Director's decision in the district court of Travis County. After hearing, the district court rendered judgment affirming the decision of the Director.

In 1994, Jamal Nickmard bought the involved 28-acre tract from the Federal Deposit Insurance Corporation for $80,000. In making the purchase, Nickmard was acting for his mother, Alam Tajgardoun, pursuant to a statutory durable power of attorney. After the purchase, he transferred title to his mother. Over the next several years, Nickmard, acting for his mother, sold six parcels from the tract varying in size from over five acres to just under one acre. Finally, only two parcels remained, a twelve-acre tract and the four-acre detention pond.

After a potential sale of the twelve-acre tract fell through, Nickmard decided to try to develop the tract by his own efforts. Lacking capital, he turned to a family friend, a business associate and a man of means, Jessie Sanusi. Not experienced in the business of subdividing land, Sanusi had no taste for taking on the project alone. He wavered until Nickmard agreed to work with him as a "development consultant." Sanusi then committed himself and his funds to the project. Sanusi formed Ranna in 2000 to acquire the tract and develop it into what became "Riverway Estates."

The District's detention requirements for the Riverway Estates included the four-acre pond. Ranna's proof was that Nickmard, acting for his mother, agreed to sell the four-acre pond to Ranna for $800,000. In September 2003, Ranna executed a promissory note payable to

Tajgardoun, secured by a deed of trust. Shortly after the closing, there was a flurry of transactions substituting other collateral to secure the $800,000 purchase-money loan.

Nickmard became much more than a "development consultant" to Sanusi and Ranna in the purchase of the detention pond. He was also the attorney and agent for his mother Tajgardoun, the seller of the property. He was the person who conducted the negotiations for both the buyer and the seller in the transactions. Nickmard was the consultant that Ranna used in all of its dealing with his mother.

From 2003 forward, Nickmard was vice-president, secretary, and treasurer of Ranna as well as the majority owner of the company. In a deposition in a lawsuit then pending, Nickmard was asked if his mother had received any payments from Ranna for the sale of the detention pond. Nickmard responded that she had received no money to date, but that she would be paid.

Sanusi testified on deposition in the lawsuit that there was nothing in writing obligating Ranna to make payments of any dollar amount to Tajgardoun for purchase of the pond. He answered, "It's verbal [sic] . . . I can't think of any written." Sanusi testified further that there was nothing in writing setting out the terms of the oral agreement between Ranna and Tajgardoun. Sanusi later filed an affidavit with the Director recanting this testimony.

In this Court, Ranna asserts by its first issue that the district court erred in conducting a substantial-evidence review of the case. Ranna advances three arguments in support of the issue, the first being, "De novo review applies to construction of statutes/rules." In support of its assertion, Ranna cites several cases and the Code Construction Act setting out stock rules of construction.

More to the point, the Agency agrees that statutes and agency rules are reviewed de novo by the court in the sense that the term describes the court's authority to substitute its legal

3

judgment for that of the agency's on the proper construction of statutes or rules. *See, e.g.*, *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624–25 (Tex. 2011). This concept is an integral part of substantial-evidence review. *See id.*

Ranna is mistaken, however, if it is claiming that it was entitled to a trial de novo. A trial de novo is only available, if at all, by specific statutory authorization. Tex. Gov't Code § 2001.175. Otherwise, consideration of agency decisions or orders is by substantial-evidence review, whether the statute authorizing review states that as the standard or is silent as to the scope of review. *Id.* § 2001.174.

Texas Water Code section 5.351(a) provides: "A person affected by a ruling, order, decision, or other act of the commission may file a petition to review, set aside, modify, or suspend the act of the commission." Because section 5.351(a) does not specify a standard of review, substantial evidence review is mandated. *See* Tex. Gov't Code § 2001.174.

Ranna argues next that "De novo review applies because the [Agency] did not conduct a contested-case hearing." Ranna has not shown the Court a statute or rule requiring the Agency to afford a contested-case hearing on a municipal district's request for approval of a reimbursement amount. In absence of such authority, Ranna had no right to a contested-case hearing. *See Texas Dep't of Ins. v. State Farm Lloyds*, 260 S.W.3d 233, 243 (Tex. App.—Austin 2008, no pet.).

Ranna contends that it is "not possible" to conduct a substantial-evidence review of an agency decision made without a contested-case hearing. To the contrary, the Supreme Court and this Court have recently concluded that substantial-evidence review may be afforded on such a

4

record. *See Texas Comm'n on Envt'l Quality v. City of Waco*, 413 S.W.3d 409, 424–25 (Tex. 2013); *Sierra Club v. Texas Comm'n on Envt'l Quality*, 455 S.W.3d 214, 233 n.9 (Tex. App.—Austin 2014, pet. denied); *Texas Comm'n on Envt'l Quality v. Sierra Club*, 455 S.W.3d 228, 235–36 (Tex. App.—Austin 2014, pet. denied).

Ranna next claims the Agency's failure to afford it a hearing was a denial of due process. In support of its contention, Ranna states, "the lack of the opportunity to develop a record that could overcome the substantial-evidence standard may rise to the level of being a violation of procedural due process and, for that reason, arbitrary."

The Supreme Court of the United States has articulated the due-process standard for administrative proceedings: "[D]ifferences in the origin and function of administrative agencies 'preclude wholesale transplantation of the rules of procedure, trial and review which have evolved from the history and experiences of courts.' . . . The judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decision making in all circumstances. The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and an opportunity to meet it.'" *Matthews v. Eldridge*, 424 U.S. 319, 348–49 (1976) (internal citations omitted) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171–172 (1951) (Frankfurter, J., concurring) and *Federal Commc'n Comm'n v. Pottsville Broad. Co.*, 309 U.S. 134, 143 (1940)).

The Agency responds, correctly, that Ranna was not deprived of an opportunity to make a record or to be heard. Agency staff solicited material from Ranna, specifically requesting documentation of costs for the sale of the property to Ranna. Ranna responded. Much of the record

5

consists of its filings. Further, Ranna had an opportunity to be heard on written submission of documents, affidavits, and argument.

By its second issue Ranna claims, in effect, that the Director erred in failing to use the $800,000 purchase price as the reimbursement to Ranna for its acquisition of the detention pond.

The controlling Agency rule provides in pertinent part as follows:

> If a district acquires such a site, as described in subsection (b) of this section, which is outside the 100-year floodplain, *from a developer* within the district or subsequent owner of developer reimbursables, the price shall be determined by adding to *the price paid by the developer* for such land or easement *in a bona fide transaction between unrelated parties* the developer's actual taxes and interest paid to the date of acquisition by the district. . . . Provided, however, *if* the executive director determines that such price appears to exceed the fair market value of such land or easement, the executive director may require an appraisal to be obtained by the district from a qualified independent appraiser and payment to the seller may be limited to the fair market value of such as shown by the appraisal . . . .

30 Tex. Admin. Code § 293.51(c)(1) (Texas Comm'n on Envtl. Quality, Land and Easement Acquisition) (emphases supplied).

The Director was not persuaded that the sale of the detention-pond tract was between "unrelated parties." The record supports the Director's position. Alan B. Mckie, Ranna's engineer, made no distinction among Ranna, Tajgardoun, and Nickmard as the developer. Nickmard was the majority owner of Ranna and served as its vice president, secretary, and treasurer. In the sale of the detention-pond tract, he represented the seller, his mother, and the buyer, his corporation, and he did the negotiations for both sides. The Director could have concluded that Nickmard probably accepted confidences from, and enlisted on, both sides. It is the omnipresent Jamal Nickmard, in the middle of everything, that makes this a transaction among related parties.

6

Likewise, Ranna's documentation, or lack thereof, did not persuade the Director that the $800,000 transaction was bona fide. The Agency requested a HUD closing statement that was never supplied. Instead, Ranna sent two unsworn pages it termed the buyer's and seller's closing statement. Four days after the closing, other collateral was substituted for the detention-pond tract to secure the $800,000 promissory note. According to the Harris County Appraisal District, the substituted collateral was valued at $138,080. In an effort to show partial payment of the $800,000 note, Ranna filed with the Director a letter from Prosperity Bank containing two lines of text declaring that on June 6, 2010, its customer, Rhino Global Investments, received a wire deposit for $394,380.62 and that Rhino had transferred that sum to Nickmard's account. This transaction occurred in 2010, almost seven years after the $800,000 transaction. In addition, the Bank's letter gave no information about what the deposit was for. The Director did not act unreasonably in declining to be persuaded that Ranna's documents demonstrated that a bona fide transaction had occurred.

By its final issue, Ranna claims that the Director erred in failing to address in the decision certain reimbursable items such as legal fees, loan-closing costs, and engineering costs. Ranna requests this Court "to remand" this matter to the Agency for determination of these items.

Although the focus of the District's application was the cost of the detention pond, the District recognized the other reimbursable items and committed in its application to reimburse Ranna for these items pursuant to "standard reimbursement procedures." Accordingly, this claim did not become an issue for the Director's determination, nor has Ranna shown this Court any record cite showing that it raised this matter in district court.

The judgment is affirmed.

_____

Bob E. Shannon, Justice

Before Justices Puryear, Bourland, and Shannon*

Affirmed

Filed:   May 24, 2018

*  Before Bob E. Shannon, Chief Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).